[No. 3357.   Dec. 17, 1928.]

CATER v. SUNSHINE VALLEY CONSERVANCY DIST.

[274 Pac. 52.]

A. Av. Rivera and F. T. Cheetham, both of Taos, for appellant.

Barker & Fahy, of Santa Fe, and Barker, Fahy & Beutler, of Taos, for appellee.

Charles B. Barker, of Santa Fe, amicus curiæ.

OPINION OF THE COURT

WATSON, J.   Chapter 45, Laws of 1927, provides for the organization of conservancy districts, and is of

state-wide application, except for subsection 12 of section 202, which is as follows:

"No district formed under the provision of chapter 140, Laws of New Mexico 1923, or formed under the provisions of this act, for the protection and conservation of property in the Rio Grande Valley, shall include any lands south of the Elephant Butte dam, or in or north of the county of Santa Fe, provided that any district formed under said chapter 140, Laws of New Mexico, 1923, shall retain all rights to impound and control the water of the Rio Grande or other streams or waters, or to acquire rights and property incident thereto that it now possesses, whether within or without the district as hereby limited and defined. Except as otherwise provided herein, the boundaries of any such district heretofore created shall be limited and confined to the territory as herein defined."

Owners of lands in the Rio Grande Valley north of Santa Fe county petitioned the district judge of Taos county, as a "conservancy court," for the organization of a conservancy district. That court, after hearing, finding that the "public safety, health, convenience, and welfare will be promoted by the organization of a conservancy district substantially as prayed in said petition, and that public necessity exists for the construction of the proposed work," made his decree, creating a district, designating its principal place of business, and appointing its directors.

Among other things the court found "that the purposes for which said district is established are:

"A. To build reservoirs, canals, drainage, irrigation, or community ditches, and acequias.

"B. To construct and complete an irrigation system to maintain the irrigability of the lands herein described.

"C. To purchase, extend, improve, operate, and maintain the Sunshine Valley irrigation canal, now owned and operated by the Sunshine Valley Irrigation Company.

"D. To sink wells on the land herein described for the purpose of irrigating and reclaiming the water supply, on said lands for irrigation and domestic purposes.

"E. To co-operate and contract with the federal or any state government or agent or any department thereof, to promote the agricultural resources and marketing facilities of the district, to levy assessments, issue bonds, and make appropriations of money and do all things necessary to effectuate and fulfill the purpose of the said Conservancy Act.

"F. To do all other acts within the contemplation of the said Conservancy Act, not herein specified and set forth."

Appellant had protested the organization upon the sole ground that, under subsection 12, above set forth, such organization would be illegal, because the lands therein included were all in the Rio Grande Valley and north of the county of Santa Fe. The overruling of this protest and the organization of the district are here sought to be justified by appellee on the sole ground that subsection 12, supra, is unconstitutional. Section 907 provides that the unconstitutionality of one provision shall not affect any other.

Appellee's first contention is that said subsection 12 is void under the "equal protection of the laws" clauses of the Fourteenth Amendment of the federal Constitution and of section 18, article 2 of the state Constitution.

Counsel, respectively, have cited many authorities discussing these constitutional limitations, and their relation to the police power of the state. In view of the conclusion we reach, we need not allude to them. It is sufficient to say that it is contended on the one side, and denied on the other, that there is a difference in the situation between that part of the Rio Grande Valley in and north of Santa Fe county and that part south of it, which justified the Legislature, in the exercise of the police power, in extending to the latter section and denying to the former the benefits of the Conservancy Act.

As bearing upon this question the record discloses no facts, and we have before us only such as may be judicially noticed. Appellant contends that we should take judicial notice of the fact that the lands in question are under no menace from floods, because in that section of the state the Rio Grande flows through deep gorges, which confine it to its regular course, while in that part of the valley to the south the situation is exactly the contrary. This, he contends, was a proper basis of classification. It is appellant's theory that the central idea of the Conservancy Act is protection from floods, and that the distinction made by the Legislature has a direct relation to the purpose to be accomplished by the statute.

Appellee does not deny the physical difference pointed out, nor contend that that difference would not constitute a proper basis of classification, if appellee's theory as to the purpose of the Conservancy Act were correct. It contends, however, that irrigation, equally with flood control, is a purpose of the Conservancy Act, and warrants the organization of a district. It contends that, if we take judicial notice of the fact claimed by appellant, we should likewise note that the lands in question are highly susceptible and greatly in need of irrigation. This fact appellant does not dispute.

From the findings above quoted it is plain that irrigation is the essential purpose for which the district was established. If there was any pretense of a need of flood protection, the findings do not reflect it. The petition is not before us. So it is of no importance on this appeal whether, with respect to flood protection, the two sections of the state have been differently treated. Appellee is in the position of requiring the benefits of the act only to further its irrigation needs, and, so far as this case is concerned, is not interested otherwise.

Assuming, as we do, that both the middle and the upper Rio Grande Valleys require irrigation, we have the question whether subsection 12 unlawfully discriminates between them. The question is modified to an extent by the fact that, even if the property owners here interested could not invoke the Conservancy Act, they could still have the benefit of organization under Laws 1919, chapter 41, "An act in relation to irrigation districts." However, appellee points out wide distinctions in the two acts, by reason of which the Conservancy Act might be considered more beneficial. At the best, according to appellee's theory, this discrimination exists: As between two sections of the Rio Grande Valley, both equally to be benefited by irrigation, the one may invoke either the Conservancy Act or the Irrigation Act, while the other is restricted to the latter. Whether this is a denial of equal protection of the laws is the question to which we are brought by the briefs and arguments.

Preliminary to that question, we must pass upon appellee's contention that irrigation alone, without reference to flood prevention, is sufficient cause to invoke the benefits of the Conservancy Act. Then, before reaching the constitutional question, we must also consider, as it seems to us, though counsel have not noticed the matter, whether subsection 12 prohibits inclusion of lands in or north of Santa Fe county in a district organized for irrigation purposes only. These questions direct our attention to the history, theory, and purposes of the act.

As noted in the Middle Rio Grande Conservancy District Case, 31 N. M. 188, 242 P. 683, the Ohio and Colorado statutes were the models for our own. It is a matter of public history that those statutes were the policies adopted by those states, respectively, to guard against recurrence of the Dayton and Pueblo floods. The courts in those states have not hesitated to take judicial notice of that history, and they have at least assumed that flood control was the central idea and purpose of the conservancy laws.

In the Middle Rio Grande Conservancy District decision we did not judicially notice the former floods which had occurred in that district and the existing and increasing dangers from that source. We did assume that the Legislature had taken notice of those facts, and, inferentially, we assumed that our Conservancy Act had the same purpose as those of Ohio and Colorado. We there held that, in adopting the original Conservancy Act (chapter 140, Laws of 1923), the Legislature did not apparently have "in mind alone or principally the reclamation of lands." We alluded to the fact that adequate irrigation and drainage statutes were already in force and not interfered with by the Conservancy Act. We suggested that, if the attempt were made to use the powers conferred by the Conservancy Act to accomplish a purpose not within the purview of the act (for instance, mere reclamation, or economic development), the courts would doubtless prevent it.

Since that decision the act has been amended. Subsection 12, here complained of, has been added. Language

has also been inserted indicating a legislative intent to broaden the purview of the act. Section 102 now declares:

"This act shall be construed as applying to districts organized for the purpose of providing and maintaining flood protection, river control, drainage, water storage for supplementing irrigation needs, constructing and maintaining distribution systems for irrigation; and other improvements for public health, safety, convenience and welfare either in co-operation with the United States government or any department thereof under federal laws, or to districts organized for the purpose of making such improvements under the powers in this act contained; but the provisions hereof shall not apply to or affect irrigation or drainage districts heretofore organized under any other laws of this state."

But of greater significance is the inclusion among the purposes, "for all or any" of which the organization of the district is authorized, "(f) of providing for irrigation where it may be needed and otherwise benefiting and developing agricultural lands or lands susceptible to irrigation or agricultural development." See section 201. Compare Laws 1923, c. 140, § 201.

It is not unreasonable to infer that the Legislature, anticipating, because of what we said in the Middle Rio Grande Conservancy District Case, that this court would hold, under the provisions of the original act, that the purpose of reclamation or development of lands was not alone sufficient to warrant the organization of a conservancy district, enacted the amendment to forestall such an interpretation of its policy.

The Ohio statute thus stated the purposes "for all or any" of which organization might be had:

"(a) Of preventing floods; (b) of regulating stream channels by changing, widening and deepening the same; (c) of reclaiming or of filling wet and overflowed lands; (d) of providing for irrigation where it may be needed; (e) of regulating the flow of streams; (f) of diverting, or in whole or in part eliminating water courses." Laws of Ohio, vol. 104 (1914) p. 14.

This classification was, perhaps, unscientific. It may be doubted whether all the purposes stated are of equal standing. (b), (e), and (f) were, it would seem, mere means of (a) "preventing floods." (c) might be such a means. It might also, together with (d), be considered

an incidental advantage to follow from affecting (a). This we deduce from the history and spirit of the act.

To illustrate our meaning: While "regulating the flow of streams," for instance, was a proper purpose, it may well be doubted if it was an end in itself, without reference to its effect upon "preventing floods." To regulate the flow of a stream merely to improve navigability we assume was not within the purview of the act. Reclamation and irrigation were probably not intended as independent purposes, without reference to "preventing floods." It is quite likely that they were considered as incidental benefits, to be made possible by the means employed to prevent floods.

When Colorado borrowed the idea and adapted the statute from Ohio it stated the purposes thus: "(a) Preventing floods; (b) regulating stream channels by changing, widening and deepening the same; (c) regulating the flow of streams; (d) diverting, controlling, or in whole or in part eliminating water courses; (e) protecting public and private property from inundation." Extraordinary Session, Laws of Colorado 1922, c. 1, § 2.

Here purposes (a) and (e) seem to be substantially the same, while (b), (c), and (d) seem to be merely means to be employed in accomplishing the main object—flood prevention. Neither irrigation nor drainage are enumerated as "purposes," but the latter is allowed as "incident to such purposes."

When in 1923 we undertook legislation on the subject, we adopted all of the purposes mentioned in the Colorado statute. In addition, we adopted purpose (c) from Ohio, adding the word "draining" to the Ohio words "reclamation" and "filling." We omitted Ohio's (d).

All of these statutes set forth powers which may be exercised "as incident to such (the enumerated main) purposes." The incidental powers of the Ohio statute are clearly means merely of "fulfillment of the purposes of this act." In Colorado they are greater in number, but not different in character. In New Mexico, however, the statement of incidental powers includes more than mere

means to accomplish the main enumerated purposes. It includes development and reclaiming of water for distribution, sale, or lease, construction and operation of electric plants, and the promotion of the agricultural resources and marketing facilities of the district.

It seems plain, then, that our Legislature contemplated broad powers and a great diversity of activity for a conservancy district. When it appeared that this court was perhaps disposed to limit the purview of the act to flood control as the essential purpose, it promptly included among those purposes "providing for irrigation where it may be needed. * * *"

While the idea readily suggests itself that in Ohio, where it is little practiced, irrigation is merely an incidental purpose, the case is different in New Mexico, where, for the most part, that is the sole means of agricultural practice and development. Colorado, also an irrigation state, omitted irrigation as a purpose of the act. New Mexico, having originally excluded it, now includes it.

We think, therefore, that appellee is right in the contention that irrigation, equally with flood control, is now a purpose justifying the organization of a conservancy district, and that the classification attempted by the Legislature is not to be judged, as to its constitutionality, simply as between one locality requiring flood control and another locality not requiring it.

This brings us to the second of the questions stated. Does subsection 12, in excluding lands in and north of Santa Fe county from its operation, apply to districts established, as the present district was apparently established, merely for irrigation? The pertinent language is: "No district formed * * * for the protection and conservation of property in the Rio Grande Valley, shall include. * * *" This district was not formed for the "protection" or "conservation" of property. It was formed for "irrigation" and "reclamation" of lands.

It is true that the term "conservation," as frequently used, is broad enough to include irrigation projects; but,

having in mind the history of the public discussions and of the legislation, federal and state, there is a well-defined distinction between "conservation" and "reclamation." The former term has come to be used when considering the preservation of what we have. The other is most aptly applied when considering the development of latent resources, or the restoration of what has been impaired. It includes irrigation. The word "protection," which the Legislature used in subsection 12, in connection with "conservation," is appropriate to express the one idea. It does not accurately express the other. If, for instance, the Legislature had said that these lands should not be included in any district formed for the "development" or the "reclamation" *and* "conservation" of property, both ideas would have been expressed.

From the facts assumed in this case, a basis for distinction between the lands of the upper and middle Rio Grande Valleys is readily to be discerned in the matter of conservancy or flood control. No such basis for distinction has been pointed out in the matter of irrigation or reclamation. We are here dealing with an exception. The act has statewide application in all other respects. Proper construction limits that exception to the cases clearly expressed by the statute.

If the intention was entirely to exclude the lands in question from the operation of the act, the words "for the protection and conservation of property" are pure surplusage. The section would mean exactly the same without them. In construing it, we should not disregard a portion which the Legislature has deliberately inserted. If we give the broad meaning to "conservation," and distort the meaning of "protection," we remove all reason for their use.

These considerations lead us to answer the second question in the negative. That removes the constitutional question from the case. It is simply one of statutory construction. A district may be formed under chapter 45, Laws of 1927, for the reclamation of lands by irrigation. In such case subsection 12 does not apply. So the protest

set forth no reason for denying the petition, and the court did not err in overruling it.

Appellant makes the further point that the court was without jurisdiction to make the decree, because it was the prayer of the petition that the district be organized under chapter 140, Laws 1923, which chapter was repealed by chapter 45, Laws 1927. The petition is not in the record. The cause is here on an agreed statement of the case, certified by the judge in lieu of a bill of exceptions. It appears that the petition was originally filed before the repeal of chapter 140. Subsequently, by authority of the court and prior to any action, the petition was withdrawn and refiled as an original petition in the present proceeding. Evidently the petitioners overlooked the inaptness of the prayer. The matter was mentioned at the hearing, and no objection made on that account.

We do not consider that there is any merit in the present point. No prejudice can have resulted. There can be no doubt that the petitioners, the protestant, and the court all understood that the proceedings were under the new act. Section 202(6) of the act provides:

"No petition with the requisite signatures shall be declared null and void on account of alleged defects, but the court may at any time permit the petition to be amended to conform to the facts, by correcting any errors in the description of the territory or in any other particular."

Even in the absence of that provision, we should deem it our duty, after judgment on appeal, to consider the petition as amended. Code 1915, § 4167; Friday v. Railway Co., 16 N. M. 434, 120 P. 316; Canavan v. Canavan, 17 N. M. 503, 131 P. 493, Ann. Cas. 1915B, 1064.

Since the foregoing was written, Mr. Charles B. Barker, in behalf of the commissioner of public lands, has filed a brief as amicus curiæ. He points out, as matter to be judicially noticed, that a large percentage of the lands included in the district are held by contract of purchase from the state. State lands apparently may be included under section 805 of the statute. Some infirmities in the language of this section, and difficulties in interpreting it, are pointed out. It is suggested that practical and consti-

tutional objections to this section may prevent the successful functioning of the district and the sale of its bonds.

We do not see how we can dispose of any of these suggestions on the present appeal. We have but a partial record. The case stated limits us to the two questions which we have decided. The questions now briefed have not been, as it seems, passed on by the trial court, and we have no party who claimed in the court below to be injured by the fact that state lands have been included within the district. So we think that the questions suggested by amicus curiæ must be postponed until they shall be properly raised in some appropriate further proceeding.

As to the questions decided by the trial court and properly before us, we find no error in the judgment. It will therefore be affirmed, and the cause remanded.

It is so ordered.

PARKER, C. J., and BICKLEY, J., concur.