75 P.2d 707

**HAMILTON v. ARCH HURLEY CONSERVANCY DIST. et al.**

No. 4366.

Supreme Court of New Mexico.

Jan. 14, 1938.

R. A. Prentice, of Tucumcari, for appellant.

J. O. Seth, of Santa Fe, and James L. Briscoe, of Tucumcari, for appellees.

SADLER, Justice.

The plaintiff appeals from a judgment dismissing his complaint in a suit for a declaratory judgment maintained by authority of Laws 1935, c. 143, and trial court rule 1935-143-1 promulgated pursuant thereto. Arch Hurley Conservancy District (hereinafter called the conservancy district) and its board of directors are the defendants. The defendant conservancy district was organized under Laws 1927, c. 45, Comp.St.1929, c. 30. Its due organization and the definition of its boundaries as prescribed by the act seem to be conceded.

The complaint discloses that its board of directors, acting by authority of said conservancy act and particularly under sections 502 and 503, Laws 1927, c. 45, Comp.St.1929, §§ 30-502, 30-503, have adopted a resolution levying a tax of 6 mills on all real estate within the district, directing that same be certified to the board of county commissioners of Quay county (within which county said conservancy district is located) for inclusion in the next annual levy and pledging the proceeds of said levy as security for negotiable warrants to be issued in conformity with section 503 of the act.

It fairly appears from the complaint that plaintiff is the owner of real estate within the district which will be subject to said levy. Validity of the levy is assailed upon the ground that its imposition will bring the total levy applicable to property within the district in excess of the

20-mill limit fixed by article 8, section 2, of the Constitution, as amended by the adoption of a Joint Resolution of the Eleventh Regular Session of the Legislature of the state of New Mexico at a special election held September 19, 1933. See Laws 1933, p. 541.

The prayer of the complaint is that the court declare the board of directors to be without power to make any levy which will cause the total levy for all purposes to exceed the 20-mill limit fixed by Const. art. 8, § 2.

The defendants demurred upon two grounds: (1) That plaintiff lacked sufficient interest to permit him to maintain the suit; and (2) that the constitutional provision invoked is not applicable to this levy. The demurrer was overruled as to the first ground and sustained as to the second. The plaintiff declining to amend, judgment was rendered dismissing his complaint. He prosecutes this appeal to review the judgment, assigning as error the trial court's action in sustaining the demurrer. Thus is presented the single question whether the 6-mill levy involved is proscribed by Const. art. 8, § 2, since, as appears from the complaint, added to other levies upon tangible real and personal property within the district, a total levy in excess of 20 mills results.

Section 502 of chapter 45, Laws 1927, Comp.St.1929, § 30-502, is captioned "Preliminary Fund" and authorizes the board of directors of a conservancy district organized under its provisions to levy an assessment upon real property of the district not to exceed 6 mills "for the purpose of paying the expenses of organization, of assessing benefits and damages, for surveys and plans, and for other incidental expenses which may have been incurred prior to the time when money is received from the sale of bonds or otherwise." The assessment is levied by resolution of the board and is known as the "Preliminary Fund Assessment." It is to be certified to the board of county commissioners of the various counties in which lands of the district are located for inclusion in the next annual levy for state and county purposes. The amount of the levy is collected in the same manner as are taxes for county purposes.

Subdivisions 3, 4, and 5 of said section 502 read as follows:

"(3) If such items of expense have already been paid in whole or in part from other sources, they may be repaid from the receipts of such levy, and such levy may be made although the work proposed may have been found impracticable or for other reasons is abandoned.

"(4) In case the proceeds of such assessment, including those of any other assessment previously made for the preliminary fund, exceeds the total amount of money borrowed for the preliminary fund or the amount needed to complete the preliminary expenses, the surplus shall be placed in the general fund of the district and used to pay cost of construction, except that the same may be refunded or adjusted

as hereinafter provided if deemed more just and so ordered by the court; *Provided, however,* that if the district be dissolved the amount of surplus, if there be any, shall be prorated and refunded to the land owners paying such assessment.

"(5) The information collected by the necessary surveys, the appraisals of benefits and damages and other information and data are hereby declared to constitute benefits for which said assessment may be levied. In case a district is dissolved or abandoned, before the work is constructed, the data, plans and estimates which have been secured shall be filed with the clerk of the court in which the district was organized, and shall be matters of public record available to any one interested."

Section 503 authorizes the board of the district, in order to facilitate the preliminary work, to borrow money at a rate not exceeding 8 per cent. per annum through the issuance and sale of negotiable warrants secured by a pledge of the proceeds of the 6-mill levy.

Article 8, § 2, of the State Constitution, as amended on September 19, 1933, see Laws 1933, p. 541 (the portion added by amendment being italicized below), reads as follows:

"Taxes levied upon real or personal property for state revenue shall not exceed four mills annually on each dollar of the assessed valuation thereof except for the support of the educational, penal and charitable institutions of the state, payment of the state debt and interest thereon; and the total annual tax levy upon such property for all state purposes exclusive of necessary levies for the state debt shall not exceed ten mills; *Provided, however, that taxes levied upon real or personal tangible property for all purposes, except special levies on Specific classes of property and except necessary levies for public debt, shall not exceed twenty mills annually on each dollar of the assessed valuation thereof, but laws may be passed authorizing additional taxes to be levied outside of such limitation when approved by at least a majority of the electors of the taxing district voting on such proposition.*"

It is the contention of the plaintiff that the proposed 6-mill levy is in direct violation of this constitutional provision, since a total levy in excess of 20 mills results from its addition to other existing levies. His position is unassailable if the provision is applicable. The defendants assert it is inapplicable and contend that already we have so held in principle, citing In re Proposed Middle Rio Grande Conservancy District, 31 N.M. 188, 242 P. 683. In that case we were dealing with Laws 1923, c. 140, under which Middle Rio Grande Conservancy District was organized. The act was repealed by section 910 of Laws 1927, c. 45, Comp.St.1929, § 30-910, which carried a saving clause making the provisions of the new act applicable to any conservancy district organized under the earlier one and further providing that its repeal should not invalidate any act or

proceeding theretofore done under it, nor affect the continuity and status of any district so organized, but that any such district should continue to exist under and be covered by the provisions of the new act.

The 1927 act is in many respects an exact counterpart of the 1923 act, although, of course, the later act does accomplish certain important changes. See Cater v. Sunshine Valley Conservancy District, 33 N.M. 583, 274 P. 52. Section 502 of each act is practically the same. The difference important now to be mentioned is that said section in the 1923 act authorized the levy of a uniform assessment upon real property within the district "not to exceed fifty cents an acre as a level rate," whereas the same section of the 1927 act authorizes a like assessment upon real property within the district "not to exceed six (6) mills for every dollar of assessed valuation thereof." Subdivision (5) of section 502 in each act contains a legislative declaration that the preliminary work constitutes benefits for which the preliminary fund assessment may be made.

The earlier act, Laws 1923, c. 140, was before the court as stated supra. In re Proposed Middle Rio Grande Conservancy District, 31 N.M. 188, 242 P. 683, 694. Its validity was sustained as against numerous constitutional objections. One related to the very section now assailed. It was contended that the authority in the board to levy a tax on all lands in the district "not to exceed fifty cents an acre"

for meeting preliminary expenses contravened Const. art. 8, § 1, providing:

"Taxes levied upon tangible property shall be in proportion to the value thereof, and taxes shall be equal and uniform upon subjects of taxation of the same class."

The question was raised by appellants in their fourteenth point, reading as follows:

"Does section 502, authorizing preliminary fund assessment, constitute a delegation of legislative authority *or violate section 1 of article 8 of the Constitution of the state of New Mexico regarding taxation,* because said assessment is made on an area basis rather than on the ad valorem basis, and should such preliminary fund assessment be sustained on the ground of special benefits to be conferred on lands within the conservancy district, apportioned on the area basis, and therefore not within the operation of the constitutional provisions applying to general taxation?" (Italics supplied.) In re Proposed Middle Rio Grande Conservancy Dist., supra.

It is obvious that if the tax was the kind of tax contemplated by this constitutional provision, the section of the act authorizing it should have been stricken down. A tax imposed at a fixed sum per acre truly is not "in proportion to the value" of the land so taxed. The holding of the court is epitomized in the eleventh paragraph of the syllabus, itself prepared by the court, reading:

"Section 502 of the act, authorizing preliminary assessments to defray the pre-

liminary costs of surveys, engineers' fees, etc., does not violate section 1 of article 8 of the Constitution of New Mexico."

The fundamental basis of the decision is that the tax challenged did not constitute "taxes upon tangible property" within the meaning of that phrase as employed in Const. art. 8, § 1. While the point presented in the Middle Rio Grande Conservancy Case as quoted supra is somewhat involved and embraces other constitutional questions than the one with which we are here concerned, nevertheless, the question whether section 502 violated article 8, § 1, requiring taxes on tangible property to be in proportion to the value thereof, was squarely put. It was impossible to reach the conclusion announced without excluding the particular tax from operation of the constitutional provision invoked. It was viewing the tax as a special assessment supported by a legislatively declared benefit equal in amount which wrought its exclusion. The authorities quoted in the opinion disposing of this point make it clear that this is the basis of the decision. The statutory definition of the word "tax" or "taxes" found in Laws 1923, c. 140, § 103 (5), although not adverted to by the court in treating this point, undoubtedly was present in the court's mind and helped it to the conclusion reached. The definition reads:

"(5) Whenever the term 'tax' or 'taxes' is used, and not otherwise specified, with reference to levies for benefits, damages, construction, improvements or mainten-ance, it shall be taken to mean special taxes or special assessments." See Laws 1927, c. 45, § 103 (5).

We later interpreted our decision on this point in the first Middle Rio Grande Conservancy Case in Gutierrez v. Middle Rio Grande Conservancy District, 34 N.M. 346, 282 P. 1, 2, 70 A.L.R. 1261, as shown by paragraph 11 of the syllabus as follows:

"An assessment made under chapter 45, Laws of 1927, is not a tax within the meaning of section 1, art. 8, of our Constitution.".

The inquiry logically follows: Does the phrase "taxes levied upon real or personal property" as employed in Const. art. 8, § 2, have the same meaning as the phrase "taxes levied upon tangible property," appearing in section 1 of said article? In other words, were the framers of the Constitution thinking of some different kind of tax when they spoke in section 2, fixing a limitation, from that had in mind in section 1, when they enjoined equality, uniformity, and ad valorem imposition? An affirmative answer to the first inquiry compels a negative response to the second, which presents the same question differently framed. The conclusion seems inescapable that no such immediate transformation in thought occurred. And the same kind of tax, a general tax, being the theme of each section, if enjoining ad valorem imposition in section 1 of said article does not proscribe the tax upheld as a benefit assessment in the first

Middle Rio Grande Conservancy District Case, supra, no more does the limitation provision in section 2 inhibit the imposition here laid since it, too, is a benefit assessment, unless the fact that it is levied on a millage basis denies it such character. That it does not, we shall later demonstrate.

This court, in State v. Ingalls, 18 N.M. 211, 135 P. 1177, 1180, held that the word "taxes" as used in Const. art. 8, § 1, enjoining equality and uniformity, applied only "to taxes, in the proper sense of the word, levied with the object of raising revenue for general purposes." The court cited 37 Cyc. 731 (61 C.J. 106) to the proposition that such a constitutional provision bears a restricted meaning. The text cited discloses that the equality provision does not extend "to local assessments for improvements levied upon property specially benefitted thereby." See, also, State ex rel. Capitol Addition Bldg. Commission v. Connelly, 39 N.M. 312, 46 P.2d 1097, 1101.

Our remarks in the Connelly Case as to the meaning of the word "debt" in separate sections of Const. art. 9 are apposite to the present inquiry upon the meaning of the word "taxes" in Const. art. 8, §§ 1 and 2. We said:

"While it is true that in Seward v. Bowers [37 N.M. 385, 24 P.2d 253] we were concerned with the intended meaning of the word 'debt' as found in article 9, § 12, while here it is its meaning as employed in section 8 of the same article,

we are convinced that the term is used in the same sense in each section."

We draw the same conclusion upon the meaning of the word "taxes" as employed in sections 1 and 2 of article 8.

■ This conclusion is decisive unless the fact that the assessment is imposed upon a millage basis alters the situation. In the first Middle Rio Grande Conservancy Case the court had before it Laws 1923, c. 140, section 502 of which authorized a per acre assessment. Laws 1927, c. 45, under which defendant conservancy district is organized, authorizes a levy for the preliminary fund not to exceed 6 mills upon the assessed value of real estate within the district.

We think this circumstance does not alter the essential nature of the imposition. The inquiry remains whether it is a benefit assessment or a general tax. That the Legislature did not think of the assessment as a general tax, if not made sufficiently clear by its declaration of benefits, abundantly appears otherwise. Subdivision 4 of section 502, Comp.St.1929, § 30-502, subd. 4, directs payment of any surplus arising from the levy into the general fund and its use to pay cost of construction (where, of course, the project has been found practicable) with the proviso "that if the district be dissolved the amount of surplus, if there be any, *shall be pro-rated and refunded to the land owners paying such assessment.*" Italics supplied.

The case of Miami County v. Dayton, 92 Ohio St. 215, 110 N.E. 726, 731, is

exactly in point on this question. It is a case much relied upon by this court in arriving at the decision announced in Re Proposed Middle Rio Grande Conservancy District, 31 N.M. 188, 242 P. 683, 686. Indeed, as observed in that case, the New Mexico conservancy act was patterned after the Ohio and Colorado conservancy acts and "in the main the provisions of all three acts are the same." In the Miami County Case the provision for raising a fund to meet preliminary expense apportioned to benefits was upon a millage basis. The provision withstood successfully every constitutional objection urged against it. The court said:

"The common pleas court having found in this cause that the allegations of the petition are true, and having therefore organized the drainage district, it must be presumed that the lands included within such district are benefited so as to justify the assessment as to preliminary plans, surveys, etc., by a flat rate of three-tenths of a mill upon all lands included within such district. No question is seriously made as to the actual cost of any plan hereafter adopted or the expense of its maintenance. The three-tenths mill for preliminary expense is the only question seriously made. We do not believe that such levy, made under the exercise of the sovereign police power of the state, violates any provision of state or federal Constitution."

■ The levy of the tax on a millage basis is no repudiation of the legislative determination that it is according to benefits. As was said in St. Louis Southwestern Railway Co. v. Board of Directors, 81 Ark. 562, 99 S.W. 843, 845:

"The fact that the assessment is made upon the whole value of the property does not imply that it is not also according to the benefits to accrue from the improvement, for it is not an arbitrary or unreasonable method of ascertaining the amount of the benefits to assume that they will accrue in proportion to the actual value of the whole property. The Legislature acted upon this assumption in providing that the assessments should be fixed according to value, and we cannot say it is arbitrary or unreasonable."

See, also, to the same point, Neterer v. Dickinson & Watkins, 153 Ark. 5, 239 S.W. 722; Standard Pipe Line Co. v. Index-Sulphur Drainage District, 173 Ark. 372, 293 S.W. 1031, certiorari dismissed, 278 U.S. 558, 49 S.Ct. 17, 73 L.Ed. 504.

For other cases dealing generally with the subject of preliminary fund benefit assessments at a fixed sum per acre, see Houck v. Little River Drainage District, 248 Mo. 373, 154 S.W. 739, affirmed 239 U.S. 254, 36 S.Ct. 58, 60 L.Ed. 266; Missouri Pacific R. Co. v. Sears, 166 Ark. 104, 265 S.W. 653; case note 70 A.L.R. 1274, 1289. Cf. Booth v. Groves, 43 Idaho 703, 255 P. 638.

■ The conclusion reached renders it unnecessary to construe the language "except special levies on Specific classes of property" appearing in Const. art. 8, § 2.

'Before its inclusion by the adoption on September 19, 1933, of an amendment to this section of art. 8, we already had determined in Re Proposed Middle Rio Grande Conservancy District, supra, that the preliminary fund assessment was not the kind of tax spoken of in section 1 of art. 8. We now hold the framers of the Constitution were speaking in section 2 of the same kind of tax mentioned in section 1. There is nothing in the language added by amendment to section 2 to alter this conclusion. The scope of the exception just quoted is, therefore, unessential to a decision. It is interesting to note, however, that this exact language appears in Comp.St.1929, § 141-1001, as an exception to the maximum rate of taxation fixed for all county purposes. See, also, Laws 1915, c. 54, § 12.

Finding no error, the judgment of the district court will be affirmed, and it is so ordered.

HUDSPETH, C.J., and BICKLEY, BRICE, and ZINN, JJ., concur.