191 P.2d 338

In re ARCH HURLEY CONSERVANCY
DIST., HUDSON IRRIGATION
EXTENSION.

No. 5008.

Supreme Court of New Mexico.

Jan. 2, 1948.

Rehearing Denied April 13, 1948.

Seth & Montgomery, of Santa Fe, and George A. Shipley, of Alamogordo, for appellants.

James L. Briscoe, of Tucumcari, for appellees.

SADLER, Justice.

The appeal is from a decree of the District Court of Quay County, incorporating a certain portion of the right of way of Chicago, Rock Island and Pacific Railway Company in the Hudson Irrigation Extension of Arch Hurley Conservancy District, after overruling and dismissing the objections of Joseph B. Fleming and Aaron Colon as trustees of said railway company to the inclusion of such right of way within said Extension of the Conservancy District named. A separate appeal also was taken from last mentioned order. The Arch Hurley Conservancy District was organized under the provisions of L. 1927, c. 45, 1941 Comp., § 77-2701 to 77-3024, and subsequently, following enactment of L. 1939, c. 148, 1941 Comp., § 77-3101 to 77-3124, qualified under the provisions of the later act. For convenience and simplicity of expression Arch Hurley Conservancy District will be referred to hereinafter as the "Conservancy District", the original act under which it organized as the "Conservancy Act"; and the area brought within the original district as an addition thereto, as the "Hudson Extension".

The proceedings to create and incorporate the Hudson Extension as a part of the Conservancy District were initiated by the filing of a petition by certain landowners praying consent of the District Court of Quay County, sitting as a Conservancy Court, for the filing of a petition to bring

the new area into the Conservancy District. The petition received the approval of the court, whereupon another petition was submitted pursuant to the provisions of 1941 Comp., § 77-2705. It described the area of the proposed extension, was signed by owners of real estate lying within the boundaries thereof and prayed for inclusion in the Conservancy District of the area described. It embraced, as stated, a certain portion of the right of way of the railway company, the appellant herein.

The railway company duly filed objections to the proposed extension and a hearing was had thereon at which much testimony was taken. The objections were overruled and dismissed and the trial court made findings of fact and conclusions of law upon which it based the order of dismissal. While somewhat lengthy, these findings and conclusions, as well as those incorporated in the later decree bringing the area described within the Conservancy District, are essential to an intelligent understanding of the errors assigned and argued. Accordingly, they will be set out in our opinion in the order of their filing below. This calls first for those made following the hearing of appellant's objections as result of which they were overruled and dismissed. They read as follows:

"Findings of Fact.

"The Court having considered the pleadings, testimony, objections, arguments, requested findings of fact and conclusions of law, makes the following Findings of Fact.

"1. That some years ago Arch Hurley Conservancy District was organized in Quay County, State of New Mexico, for the purpose of utilizing waters from Conchas Dam for irrigation purposes in said County; that approximately 80,000 acres are included in the exterior boundaries of the District, of which 45,000 were to be irrigated; that after studies of the land it has been determined that approximately 8,000 acres of the 45,000 acres are not suitable for irrigation, and it is proposed to transfer the water for such 8,000 acres to other lands outside the District within that is called the Hudson Extension.

"2. That there are approximately 25,600 acres of land within the exterior boundaries of the proposed Hudson Extension, and it is proposed to furnish water for irrigation to approximately 7,000 acres within said tract, said lands to be later selected by the Bureau of Reclamation after studies.

"3. That the railroad line of the Chicago, Rock Island and Pacific Railroad Company runs from Southwest to Northeast for a distance of approximately ten miles; that the right of way of the railroad company is 200 feet wide, and there are approximately 240 acres of land included in such right of way that the assessed valuation of said ten miles of right of way is approximately $240,000.00, and that the total valuation of the other land in the Dis-

trict in their present raw unimproved state is approximately $50,000.00.

"4. That the purposes of the Conservancy District are to provide water for irrigation, flood control and drainage, but for the proposed Hudson Extension there will be no flood control or drainage but an irrigation project only, and it is agreed that no drainage, flood control or irrigation will be provided for the lands of the Objector, and that the benefits to be derived by the Objector will come only from increase in traffic occurring on account of reclaiming of such lands in the irrigation thereof.

"5. That economists of the United States Bureau of Reclamation have made studies on estimates of the amount of freight which will be available for shipment in some manner and there has been no testimony introduced to contradict such estimates; however, I am impressed that such witnesses were rather optimistic, but I find it to be a fact that the reclamation of the lands within the proposed Extension will provide a substantial increase in the amount of business for the railroad as compared with that now originating there, but the court is unable to determine the amount of such business; the time when it will start moving in substantial quantities, or the revenue that will be derived therefrom by the Objector.

"6. That in the Construction of the diversion work and canals which will carry the water to the lands in the Arch Hurley Conservancy District the two railroads operating into Tucumcari, New Mexico, to-wit, the Objector and the Southern Pacific Railroad Company, have been paid to date approximately $400,000.00, and while the testimony shows that the majority of it has come over the Chicago, Rock Island and Pacific Railroad there has been no breakdown of figures to show the actual amount.

"7. That the petition for the inclusion of the Hudson Extension within the Arch Hurley Conservancy District has been signed by the owners of more than one-third of the land in area.

"8. That the non-irrigated lands in said District exclusive of the right of way of the Objector will be benefited by the construction of the canals and the irrigation of the 7,000 acres by reason of the fact that they will be adjoining and near to the irrigated lands and will therefore increase in value.

"9. That the present estimated cost for canals and diversion system to supply waters to the lands in the District is now estimated at $13,000.00 of which amount the Directors have agreed by contract to repay the sum of $5,655,000.00 and such action has been approved by this Court, and the resolution further provides that the 'A' lands shall bear 80 per cent of such cost and the 'B' lands 20 per cent, and I find that the right of way of the railroad com-

pany will under the present classification be classified as 'B' land, the resolution and the decree confirming it having been introduced in evidence as Exhibit P-4.

"10. As to waters being supplied to such lands within the original District there has been no classification of lands, and there has been levies made on an ad valorem basis for several years to pay the incidental expenses of the Conservancy District, and under the plan of operation of the District there will be levies made annually.

"11. That in addition to the construction cost, it will be necessary when the project gets in operation to levy a charge or tax for operation of said project, and the amount thereof has not as yet been determined, but it will be the actual expenses incident to the operation of the irrigation system by the Reclamation Service.

"12. That the contract between the District and the United States also provides that there may also be a tax levy made on an ad valorem basis not to exceed two mills for any one year to provide a bond guaranty fund up to 15 per cent to repay the indebtedness of the District to the Reclamation Service; it is also provided in the contract that special assessments to be made by the District shall include an addition to any others that are or may be authorized by law to 'conservation and development from assessment' as provided by Chapter 37, 1935 Session Laws, and that such funds shall be used for servicing the obligations of the District to the United States under the contract.

"13. That the secretary of the Interior has executed his written consent to the inclusion of lands of the proposed Hudson Extension into the Arch Hurley Conservancy District.

"14. That when it became apparent that there would be surplus water within the District for approximately 7,000 acres of land, engineers of the United States Reclamation Service made an investigation of various bodies of land in Quay County and determined that considering the quality of land, cost of applying the water thereto, and suitability of irrigation, the lands in the proposed Hudson District were the most suitable for such purpose.

"15. That all of the City of Tucumcari is within the Arch Hurley Conservancy District; that all real estate within said City is subject to the same levies which were made upon the properties of the Objector and on the same ad valorem basis; that the real estate upon which the levy of the District was made in the year 1945 excluding all properties of the Objector as shown by the tax rolls of Quay County for said year exceeded the sum of $2,000,000.-00; that the assessed value of the properties of the Objector within the original District for the year 1945 was the sum of $521,000.00.

"16. That the City of Tucumcari, New Mexico, has almost doubled in population in the last few years.

"Based upon the foregoing Findings of Fact, I conclude as a matter of law—

"1. That under the law there is no authority for the Court to exclude any land from the District but the petition must be approved or rejected.

"2. That by the act of Legislature providing that Class 'B' lands may be assessed on an ad valorem basis regardless of whether they receive drainage, flood control or irrigation water, that it was the intention of the Legislature that such projects should be considered at least in part a public improvement, and part of the cost thereof should be paid by ad valorem tax on all the property within the District.

"3. That the Objections filed by the Trustees of the Railroad Company should be dismissed and the prayer of the Petitioners granted."

In due season following the filing of its decision containing the foregoing findings of fact and conclusions of law and on July 24, 1946, the trial court entered its order formally dismissing the appellant's objections. This was followed by its later decree entered August 3, 1946, incorporating the Hudson Extension and the area embraced in it as an integral part of the Conservancy District. Omitting the preamble and the lengthy description of the area embraced in the Hudson Extension, the findings additional to those already made and set out hereinabove, as well as what appears to be a conclusion of law immediately preceding the decree itself, all read as follows:

"This cause having come on for hearing in open court at Tucumcari, New Mexico, * * * and the court being duly advised, finds:

"I. That the said petition of Jerry Kimes et al. for the inclusion of the area hereinafter described within the boundaries of the Arch Hurley Conservancy District has been signed and presented in full conformity with the Conservancy Act of New Mexico and amendments thereto;

"II. That the allegations of said petition are true;

"III. That no protesting petition has been filed except the petition which has been dismissed as hereinbefore stated;

"IV. That the Court has jurisdiction of the parties to and the subject matter of this proceeding;

"V. That the purposes for which said district is established are to irrigate the lands included within the extension hereinafter described and to operate the irrigation of such lands in connection with the general purposes of the Arch Hurley Conservancy District, which general purposes have heretofore been determined in the proceedings by which the said Arch Hurley Conservancy District has been formed;

"VI. That public safety, health, convenience and welfare will be promoted by the inclusion of the area hereinafter described within the Arch Hurley Conservancy District as prayed in said petition and that a public necessity exists for the inclusion of such area within such district;

"VII. That the territory which is hereby added to the said Arch Hurley Conservancy District is bounded as follows (description omitted).

"VIII. That the said territory last above described should, from the time of the entry of this decree, be for all purposes a part of the Arch Hurley Conservancy District;

"Now, therefore, it is by the court ordered, adjudged and decreed:

"That the territory as above described be and the same is hereby added to the Arch Hurley Conservancy District and from the time of the entry of this decree said area shall for all purposes be a part of said Arch Hurley Conservancy District;"

The appellant first argues under its Point I that the Hudson Extension must be considered on its own merits, separate and apart from prior proceedings for organization of the Arch Hurley District which, as previously noted, we shall refer to herein simply as the conservancy district. Since no particular ruling by us seems to be invoked and counsel for the appellees disclaims making the contention imputed to him in an anticipatory way by appellant's counsel that there has been a determination of the essential facts here involved in that "the conservancy court considered petitions covering other property not far distant, but entirely separate from the instant land, in connection with the proceedings for the formation of the Arch Hurley Conservancy District," we must assume the comment made is by way of inducement for such bearing as it may have in the further consideration of the case. It will be so treated by us.

It is next argued as Point II that under the Conservancy Act the individual petitions, by fixing the boundaries of the district, determine whether or not the property included will be benefited, thereby resulting in an unlawful delegation of power by the legislature.

The case of State ex rel. Merriam v. Ball, 116 Tex. 527, 296 S.W. 1085, is chiefly relied upon by appellant. However, an examination of same does not disclose it to have been resolved upon the question of an unlawful delegation of legislative powers but rather upon the constitutional ground that there was a denial of due process in the failure of the act involved to provide for a hearing to property owners on the question of benefits and district boundaries. Counsel do not point out the respect in which an unlawful delegation of legislative power is accomplished except as it may be found in the assertion that the in-

dividual signers of the petition under 1941 Comp., § 77-2705 "in fixing such (the) boundaries of the proposed area make the determination that all property within such proposed boundaries will be benefited by operation of a district." This is followed by the statement: "In the case at bar it is the individuals who have signed the petitions who have determined that the property of the objector's railroad will be benefited by the Hudson Extension." Upon the correctness of this assertion and that of another made later: "Under Section 77-2705(5) New Mexico Statutes, the petition need only allege, objector maintains, that *some* of the lands (described) will be benefited"—the appellant largely rests its argument under this point. As we shall presently show neither statement finds adequate support in the pertinent language of the Conservancy Act.

As a matter of fact, the petitioners *must allege* and the conservancy court *must find* that the property described in the petition will be benefited by the organization of the conservancy district—not *some* of the property described in the petition, as appellant would construe the statute—but all of it. In setting forth what the petition shall contain, § 77-2705(5), the second item provides: "That property within the proposed district will be benefited by the accomplishment of one or more of the purposes enumerated in section 201 (§ 77-2704)."

Under § 77-2709, before the conservancy court hearing the matter can declare the district organized, it must find among other things "that the allegations of the petition are true," one of the prime allegations being that the property in the proposed district will be benefited by one of the purposes of organization named in a previous section—in this case—irrigation. This statutory finding under similar acts has been held to constitute provision for a hearing as to whether or not lands included in the proposed boundaries will be benefited. Patterick v. Carbon Water Conservancy District, 106 Utah 55, 145 P.2d 503; San Saba County Water Control and Improvement Dist. No. 1 v. Sutton, Tex.Com.App., 12 S.W.2d 134, 70 A.L.R. 1255. In the Patterick case [106 Utah 55, 145 P.2d 508] from Utah, the court dealt with an act in many respects similar to our own. The petition there must allege: "That property within the proposed district shall be benefited by the accomplishment of the purposes enumerated in Section 3 of this act." And before organizing the district, the court, among other things, as is the case with our act, must find that "the allegations of the petition are true." Ruling on these provisions, the court said:

"Plaintiff also contends that the 'due process' clause is violated because there is no provision by which the court can modify the boundaries of the proposed district, nor can it determine that individual pro-

perties or sections of properties will not benefit by the creation of the district.

"Sec. 100-11-7, U.C.A. 1943, provides:

" 'Upon the said hearing, if it shall appear that a petition for the organization of a water conservancy district has been signed * * * and that the allegations of the petition are true * * * the court shall * * * adjudicate all questions of jurisdiction, declare the district organized and give it a corporate name * * *.

" 'If the court finds that * * * the material facts are not as set forth in the petition filed, it shall dismiss said proceedings * * *.'

"As we have shown above one of the material facts which the court must find true is: 'That property within the proposed district will be benefited by the accomplishment of the purposes enumerated in Section 3 of this act.' The purposes enumerated in Sec. 3 of this act are conserving, developing and stabilizing supplies of water for domestic, irrigation, power, manufacturing and other beneficial uses. It is apparent therefore that the act makes provision for a hearing as to whether or not lands included in the proposed boundaries will be benefited."

A similar holding was made in the Sutton case cited above in an opinion by the Commission of Appeals of Texas which was adopted as the opinion of the Supreme Court. There was before the court for construction Vernon's Ann.Tex.Stat. 1925, Art. 7880, § 19, reading: "If it shall appear on hearing to the commissioners' court that the organization of a district as prayed for is feasible and practicable, that it would be a benefit to the land to be included therein, or be a public benefit, or utility, the commissioners' court shall so find and grant the petition. If the court should find that such proposed district is not feasible or practicable, would not be a public benefit or utility, * * * or is not needed, the court shall refuse to grant the petition."

The court then proceeds to state the question for decision and states [12 S.W. 2d 136]:

"The question turns upon the interpretation of section 19 already quoted. Construing this section, the Court of Civil Appeals said [8 S.W. 2d 319]: 'There is no discretion in the commissioners' court under section 19 to change the boundaries in any respect. The commissioners' court is therein required either to grant or refuse the petition and the matters to be inquired into upon the hearing by the commissioners' court are specifically stated as follows: That the district is feasible and practicable, that it would be a benefit to the land to be included therein or be a public benefit or utility. If these issues are determined in the affirmative, the commissioners' court is required to grant the petition.'

"This interpretation is not an unreasonable one, and the language is susceptible

of that meaning, but it is not the only reasonable interpretation. The language is likewise susceptible of another meaning, and that is that the finding that the district is a public benefit or utility *includes the finding of benefits to each and every tract included in the project."* (Emphasis ours.)

Then following citation and quotation at some length from the case of Rutledge v. State, 117 Tex. 342, 292 S.W. 164, 7 S.W. 2d 1071, construing provisions of an earlier act of 1915, under which it was held the commissioners' court possessed authority to exclude, after hearing, any lands found not to be benefited, the court proceeds with further consideration of the act involved and says: "Here the statute not only provides for notice and a hearing as to whether or not the district is 'feasible and practicable,' and whether the same would be 'a public benefit or utility,' but, as already pointed out, also as a part of this determination whether 'it would be a benefit to the land to be included therein.' It is true the act does not specifically give the commissioners' court the power to grant the petition after having found that any part of the lands included therein would not be benefited, but rather it appears to be the duty of the court to refuse to grant the petition in such a case. This would not render the law repugnant to the due process clause, since to refuse the petition would be full relief to the complainant."

The conclusion announced in the last sentence of the quotation next above, although fortified by provision in another section of the act for a further hearing for exclusion of lands impossible of benefit as mentioned in next paragraph of the opinion, seems to have been first rested on provisions of the act akin in effect to language in ours, unaided by the latter provision. The foregoing authorities are convincing precedents against the appellant's claim that the individual signers of the petition themselves determine the lands described in the petition will be benefited or that under 1941 Comp., § 77-2705 (5-2) the petition need only allege "some" of the lands described therein will be benefited. As pointed out in the Sutton case just quoted from it would appear to be the duty of the commissioners' court, upon finding that some of the lands described cannot be benefited, to refuse to grant the petition, thus giving an objector full relief against inclusion of his lands in the district.

It would seem that in deciding contrary to appellant's contention, that the individual signers of the petition fix the boundaries and determine the benefits, we had fully disposed of the claim that legislative powers have been unlawfully delegated. However, the point made is so closely interwoven in cases cited, as well as in argument, with a contention that there is a denial of due process in these particulars that we shall cite

some additional authority to support our conclusion that no unlawful delegation of legislative power is disclosed. In addition to the cases discussed, see Fallbrook Irrigation District v. Bradley, 164 U. S. 112, 178, 17 S.Ct. 56, 41 L.Ed. 369, 395; also, In re Proposed Middle Rio Grande Conservancy Dist., 31 N.M. 188, 242 P. 683; Gutierrez v. Middle Rio Grande Conservancy Dist., 34 N.M. 346, 282 P. 1, 70 A.L. R. 1261, with annotation at 1274 under subject "Constitutionality of Levee and Flood Control acts," containing a sub-heading at page 1284 entitled "Delegation of Power." The exact claim of unlawful delegation now discussed seems not to have been made in any of the cases we have examined, notwithstanding our conservancy acts have been exposed to vigorous challenge in this Court on several occasions. The decisions involving Middle Rio Grande Conservancy District, just cited, represent two instances and for still another, see Cater v. Sunshine Valley Conservancy District, 33 N.M. 583, 274 P. 52. In Fallbrook Irrigation District v. Bradley, supra, the Supreme Court of the United States disposed of a contention analogous to the one under consideration, [164 U.S. 178, 17 S.Ct. 70] as follows:

"An objection is also urged that it is delegating to others a legislative right,— that of the incorporating of public corporations,—inasmuch as the act vests in the supervisors and the people the right to say whether such a corporation shall be created, and it is said that the legislature cannot so delegate its power, and that any act performed by such a corporation by means of which the property of the citizen is taken from him, either by the right of eminent domain or by assessment, results in taking such property without due process of law.

"We do not think there is any validity to the argument. The legislature delegates no power. It enacts conditions upon the performance of which the corporation shall be regarded as organized with the powers mentioned and described in the act."

Two other points argued by the appellant, Points V and VI, relating as they do to a claim of unwarranted delegation of legislative power, will be taken up out of order and disposed of, now that we have just finished resolving another like claim of error. It is first said that the power given by the so called "Contract Act" (L. 1939, c. 148) to the Secretary of Interior to approve or disapprove the extension of a district constitutes an unlawful or unwarranted delegation of legislative powers to that official of the United States government. It is section 19 of the act mentioned (1941 Comp., § 77-3119) to which we are referred as conferring this legislative power. It reads: "77-3119. After a reclamation contract has been entered into by a contracting district, except upon the written consent thereto of the secretary

ot the interior, no change shall be made in the organization or boundaries of such district, either by the exclusion therefrom of district lands, by the inclusion therein of new lands, or by dissolution of the district or otherwise."

Since one of the main purposes of taking advantage of the contract act is to permit a conservancy district to avail itself of government aid in constructing its works and irrigation system by virtue of the federal reclamation law therein referred to, we see no impropriety in giving the Secretary of Interior the same voice that ordinarily is extended to other money lenders or mortgagees to approve or veto any change calculated to increase or diminish size of the acreage which in part, at least, constitutes the security for the money advanced. Certainly, we find no element of unlawfully delegated legislative power in this provision for a simple means whereby he may protect the government against a diminution of its security.

What has been said as to this contention applies in large measure to the claim under Point VI that legislative power is unlawfully delegated to the same official, Secretary of Interior, in the privilege given him by the contract act as to classification of lands and apportionment of assessments. In the first place, the act itself in section 6 thereof (§ 77-3106) sets up the classification of lands into what is known as Class "A" lands, being the irrigable lands in the district to be levied against annually at a uniform rate per acre and Class "B" lands, to embrace all other real property in the district, not within Class "A", to be assessed and levied against annually on an ad valorem basis.

Although argued by appellant that the practical and real determination of how lands are to be classed rests with the Secretary of Interior under the contract act, nevertheless, an examination of pertinent sections of the act does not support this assertion. While it is true that under subparagraph 2 of section 6 of the contract act (L. 1939, c. 148) the Secretary of Interior appears to have authority to designate the irrigable lands within a contracting district under a reclamation contract, it is the Board of Directors who, within 30 days after the Secretary has given public notice of his designation of irrigable lands, meet and adopt a resolution classifying all real property into Class "A" and Class "B" property *"giving due consideration* to such designation of irrigable lands as may have been made by the secretary of interior." (Emphasis ours.) The board is enjoined to commence proceedings immediately thereafter in the conservancy court to determine the validity of such classification as provided in section 20 of the act.

Turning to Section 20 of the act (1941 Comp., § 77-3120) we find the duty enjoined on the board to commence special proceedings to establish the due execu-

tion and validity of any reclamation contract that may have been entered into by the district and authorized as well (a mandatory duty where required by the act) to commence similar proceedings "for the judicial examination, approval and confirmation of any bond issue, assessment, resolution providing for apportionment of assessments to classes of property or *classifying property,* order, act, proceeding or contract of such district." (Emphasis ours.) As already indicated, section 6 of the act enjoins it as an absolute duty on the board to commence this proceeding forthwith following the board's adoption of a resolution classifying real property to test the validity thereof.

Subsequent sub-paragraphs of Section 20 make provision for the filing of a petition, fixing of a time for hearing of same and the publication of notice for four successive weeks in the English language in a newspaper of general circulation published in each county where any of the lands of the district lie and as well in Spanish in any county of the district where there is such a newspaper of general circulation. Any person interested in the district, or any of the phases mentioned including the classification of property, may appear and answer or demur. At such hearing the conservancy court will determine the validity of any classification made as well as all other matters before the court. Provision is made for appeals to the Supreme

Court of New Mexico of any final judgment entered in such special proceeding provided the same be taken within 20 days and perfected within 60 days after the granting of such appeal.

What has been said with reference to the action of the board in the matter of classification of lands applies in large measure to apportionment of assessments. It is true, as already pointed out by appellant, that under section 7 of the contract act (1941 Comp., § 77-3107), the action of the board of directors in determining and establishing an apportionment of the assessments as between Class "A" and Class "B" property is subject to the approval of the Secretary of Interior. Nevertheless, the action of the Secretary on such apportionment must, in turn, "be submitted to the conservancy court for judicial examination, approval and confirmation of such action as in section 20 hereof provided." In other words, in the special proceeding provided for in section 20 wherein practically every phase of the organization, classification, assessment and other matters touching the activities of the district are before the court, the question of the validity of the apportionment of assessments is under review and subject to the approval of the conservancy court. We see no unlawful delegation of legislative power. On the contrary the legislature seems to have been careful in providing ample safeguards to

the property owner for a hearing on any claim of injustice, discrimination or unfairness as the classification or assessment may affect his property.

The appellant argues as its Point VII that petitioners, the appellees, abused the true legislative purpose of the Conservancy Act by applying it to a factual situation never contemplated. We are reminded by counsel of a stipulation made at the opening of the trial, to-wit: "It is agreed between the parties that the petitioners do not claim benefits to the land by reason of Flood Control, or that it is intended to include lands of the Objectors for irrigation or drainage, but they claim the right to assess them to include the District on account of incidental benefits that will be derived, that is, benefits from an economic standpoint; and this related to the additional lands proposed to be included, what is now called the Hudson District."

It is pointed out that under 1941 Comp., § 77-2704, the conservancy court is authorized to establish a conservancy district for any or all of the several purposes enumerated in said section, including prevention of floods, regulating the flow of streams, drainage, irrigation, etc., but counsel argue, nevertheless, as follows: "The Objector urges that the use of a Conservancy District for the area covered by the Hudson Extension results in a confiscation of Objector's property; this for the reason that the Conservancy Act, considered as a whole and together with the Contract Act, contemplates the use of a Conservancy District in a situation where it is possible to provide other benefits to the property than may arise from irrigation. The Acts, by their titles and provisions, are designed to be used in a locality where there may be performed a combination of purposes; for example, in a situation such as exists in the area served by the Middle Rio Grande Conservancy District, where there are performed irrigation services and definite flood control activities. Such a factual situation is in direct contrast to that existing in the area proposed to be included in the Hudson Extension."

The foregoing is a fair summary of appellant's position and contentions under this point. It must be borne in mind that the Arch Hurley Conservancy District, rightly or wrongly, already has been organized and exists under and by virtue of the provisions of the Conservancy Act. We cannot in this proceeding undo what heretofore has been done in the matter of its corporate parentage. Nevertheless, counsel reminded us at the outset that Hudson Extension must stand "on its own legs," so to speak. Hence, yielding to this admonition, we are called upon to say whether a district whose sole purpose is irrigation, accomplishing only inevitable incidents otherwise, may organize under and enjoy the benefits of the Conservancy

Act. We think so and in our opinion that is exactly what is held in Cater v. Sunshine Valley Conservancy Dist., 33 N.M. 583, 274 P. 52. Relying upon that decision as a precedent, we must hold the trial court did not err in ruling against the appellant's claim in this connection. Indeed, it is doubtful whether the requested finding and conclusion pointed out as raising the matter below had the effect of actually directing the court's attention to the question now argued.

Two additional claims of error are argued which, since somewhat related, will be treated together. The one is that the ad valorem method of tax as applied to appellant's property as a measure of benefits, especially in view of the fact that none of it will or can be used for irrigation, amounts to a taking of its property without due process of law. The other is that there is no evidence of any real benefit to appellant's lands, such as there is, being too speculative and fanciful to support a finding of benefits.

We take up first the question of the assessment and levy of an ad valorem tax in connection with a public improvement commonly and more often financed exclusively by special assessments laid in proportion to benefits. We start our consideration of the proposition with the understanding that if the legislature had created the district in the first instance, in the exercise of its discretion, it could have provided for a tax on all property within the district to pay for the costs and maintenance of the project in view of the public purpose involved. See In re Proposed Middle Rio Grande Conservancy District, 31 N.M. 188, 242 P. 683, and Patterick v. Carbon Water Conservancy Dist., supra. The power of the legislature to authorize an ad valorem tax for a public improvement has been too long and well established to be now open to question. Fallbrook Irrigation Dist. v. Bradley, supra; Memphis and Charleston Railway Co. v. Pace, 282 U.S. 241, 51 S.Ct. 108, 75 L.Ed. 315, 72 A.L.R. 1096, with annotation at 1103 under the subject: "Validity of Ad Valorem Tax for Highway Purposes without Attempt to Apportion on Basis of Benefits"; Patterick v. Carbon Water Conservancy Dist., supra.; People v. Lee, 72 Colo. 598, 213 P. 583; Smith v. Wilson, D.C., 13 F.2d 1007; Texas & P. Ry. Co. v. Ward County Irr. Dist. No. 1, 112 Tex. 593, 251 S.W. 212. The authorities mentioned abundantly sustain the right to lay an ad valorem tax on all real property in the district so long as the same is neither discriminatory nor confiscatory. In this connection it may be mentioned that all real property in the City of Tucumcari, as the trial court's findings disclose, is subject to an ad valorem tax on the same basis as is the real property of appellant in the Hudson Extension. This claim of error must be ruled against it.

Coming now to the strongly argued proposition that the benefits to be derived by appellant from the creation and operation of the district are too speculative and fanciful to afford support for a finding of benefits, we will quote the trial court's finding on this subject as follows: "5. That economists of the United States Bureau of Reclamation have made studies on estimates of the amount of freight which will be available for shipment in some manner and there has been no testimony introduced to contradict such estimates; however, I am impressed that such witnesses were rather optimistic, but I find it to be a fact that the reclamation of the lands within the proposed Extension will provide a substantial increase in the amount of business for the railroad as compared with that now originating there, but the court is unable to determine the amount of such business, the time when it will start moving in substantial quantities, or the revenue that will be derived therefrom by the Objector."

It is to be noted from the finding that the appellant offered no testimony whatever touching the question of these indirect benefits and the trial court was compelled to draw such inferences as it felt the testimony would warrant regarding same.

 It is well established that in order to justify assessment of benefits to particular lands for public improvements, it is not essential that such benefits be direct or immediate. They may consist of gains to be reasonably expected as a result of the improvement. Kansas City Southern R. Co. v. Road Improvement Dist. No. 3, 266 U.S. 379, 45 S.Ct. 136, 69 L.Ed. 335; Texas & P. Ry. Co. v. Ward County Irr. Dist. No. 1, supra. Speaking on this subject in the Kansas City Southern R. Co. case, supra, Mr. Justice VanDevanter said [266 U.S. 379, 45 S.Ct. 139]: "To justify an assessment of benefits to particular lands it is not essential that the benefits be direct or immediate. Valley Farms Co. v. Westchester County, supra, [261 U.S. 155, 43 S.Ct. 261, 67 L.Ed. 585]. But it is essential that they have a better basis than mere speculation or conjecture. Kansas City Southern R. Co. v. Road Improvement Dist. No. 6, supra, [256 U.S. 658, 41 S.Ct. 604, 65 L.Ed. 1151]. In the case of railway property they may consist of gains from increased traffic, reasonably expected to result from the improvement. Thomas v. Kansas City Southern R. Co., supra, [261 U.S. 481, 43 S.Ct. 440, 67 L.Ed. 758]; Branson v. Bush, [251 U.S. 182, 189, 40 S.Ct. 113, 64 L.Ed. 215, 220]."

The Supreme Court of Texas through the Commission of Appeals in Texas & P. R. Co. v. Ward County Irr. Dist. No. 1 [112 Tex. 593, 251 S.W. 214], supra, said: "In other cases the Legislature has left the matter of assessments of benefits to be

determined by some board or court under designated procedure. In the cases where the Legislature has itself fixed the amount of the benefits or an arbitrary method of ascertaining them, it is quite generally held that the action of the Legislature in this regard is not subject to review by the courts. Manifestly the effect of any particular improvement or public work upon any particular property is incapable of mathematical calculation or demonstration. There are so many elements which enter into the value of property, especially of real estate, that it is impossible to ascertain what effect any particular undertaking may have upon it. It may be fairly assumed that the natural effect of any public work is to enhance in some degree the value of property within reasonable proximity to the improvement. The possible and probable effect as to enhancement in value upon each particular piece of property is subject to as great a variety of opinions as there are varieties in location, distance, use, etc., as applied to each individual piece of property. The Legislature is as well qualified as any body or court to determine these matters, and the courts have wisely decreed that when it has determined them, its enactments are final, 'unless the method prescribed is one so arbitrary and unfair as to amount to an abuse of legislative power.' [Dallas County] Levee District [No. 2] v. Looney, above [109 Tex. 326, 207 S.W. 310]."

While, as pointed out by appellant's counsel, the testimony touching likely benefits was of necessity predictory in character, it was all the court had to go on and we are unable to say it does not support the trial court's finding on this issue. Query: Was not the burden on appellant, in any event, to overcome the presumption attending the board's determination, under legislative authorization, of benefits? See Kansas City Southern R. Co. v. Road Improvement Dist. No. 3, supra.

Before closing notice should be taken of the claim made by strong intimation and innuendo, if not directly charged, that the Hudson Extension was set up and agreed upon in order to capture for assessment and levy some highly assessed right of way belonging to the appellant. In this connection, it is pointed out that the assessed value of its property within the extension, although representing only a small fraction of the area involved, carries an assessed value five times greater than that of all other real property within the extension, namely, $250,000 as compared to $50,000 for all other real property.

The record does not support the implication. It appears therefrom that engineers of the Bureau of Reclamation made a study of three separate areas upon which to place the excess of water that would exist after appropriations on all lands suitable for irrigation within the boundaries of the existing conservancy district. Their relative

estimate found that the Plaza Larga Area would cost $64.32 per acre, the San Jon Area $90.34 per acre and the Hudson Area, representing the lands included in the Hudson Extension, would cost $39.81 per acre. The reason for agreeing upon it as the area of extension seems obvious.

Finding no error, the judgment of the trial court will be affirmed.

It is so ordered.

BRICE, C. J., LUJAN, J., and A. W. MARSHALL and CHARLES H. FOWLER, District Judges, concur.