259 P.2d 351

## CITY OF TUCUMCARI v. MAGNOLIA PETROLEUM CO.

No. 5490.

Supreme Court of New Mexico.

June 15, 1953.

Rehearing Denied Aug. 14, 1953.

James L. Briscoe, Tucumcari, Otto Smith, Clovis, Earl A. Brown and Chas. B. Wallace, Dallas, Tex., Culton, Morgan, Britain & White, Amarillo, Tex., for appellee.

SADLER, Chief Justice.

The appellant who was the plaintiff below seeks the review of a money judgment for $10,000 rendered against it in a condemnation proceeding instituted in the district court of Quay County and removed on change of venue from Quay County to Curry County where a jury trial was had. The judgment was in favor of Magnolia Petroleum Company, the defendant below, as the reasonable value of property appropriated by the plaintiff, City of Tucumcari, in widening Highway 66, known also as Gaynell Avenue, within its corporate limits. The first question presented, and a decisive one on the right to a new trial if the issue be resolved in favor of the city, is whether the district Court of Quay County erred in granting a change of venue to Curry County over the objection of the city. Accordingly, the question will be given first consideration.

The property involved in the taking is 13 feet off the south side of Lot 7 in Block 41 of the McGee Addition to the City of Tucumcari. The lot is approximately 151 feet long and 50 feet wide located on the north side of, and paralleling along its length,.

Robert M. Rowley and J. V. Gallegos, Tucumcari, Martin A. Threet, Albuquerque, for appellant.

Highway 66 or Gaynell Avenue as it traverses the City of Tucumcari. No question was raised below as to the necessity for the taking, leaving the sole question for determination by the jury at the trial the amount of damages suffered by defendant as a result of the taking. As already indicated, the condemnation proceeding was instituted in Quay County, where the land was located, the City moving under 1941 Comp. § 25–901 et seq., L.1905, c. 97, as amended, by a petition filed in the district court asking the appointment of three disinterested freeholders to assess the damages that would be sustained by owners affected along the route of the improvement. There followed the appointment of three freeholders· for the purpose stated and in due course they returned their appraisement into court. From an order sustaining the appraisal and pursuant to the governing statute the defendant asked and was granted an appeal to the district court of Quay County.

Thereupon, after the cause was docketed in the district court, the defendant moved for a change of venue which the trial court granted, following a hearing, by transferring the proceeding to the district court of Curry County. All of this, of course, was over vigorous objection of the City which challenged the right of the court to change the venue of the special statutory proceeding under which it was moving to take the property. Incidentally, there were some improvements on the lot, thereby injecting

at the trial a question as to whether it was necessary to move and reconstruct the improvements following the taking by the City. That question, of course, has no bearing on the right to change the venue and, if later noticed at all, it will be solely to avoid error at a new trial on the measure of damages, if found to have been committed at the trial of the case below.

If there be any discretion at all in the trial judge to grant a change of venue in a proceeding such as this, a special proceeding to condemn private property for public use, then the exercise of that discretion in favor of defendant's motion to change the venue does not present a case of error, nor does the defendant so contend. The plaintiff City stands squarely and unreservedly on the proposition that the trial court lacked power to change the venue in a proceeding such as this and with that contention we are compelled to agree.

 True enough, under 1941 Comp. §§ 19–502 and 19–503, the districts are empowered to change the venue in all cases, both civil and criminal. Nevertheless, this has been held to refer only to "civil actions" in so far as it applies to civil cases. See 29 C.J.S., Eminent Domain, § 233, p. 1200 under topic "Venue"; Santa Rosa v. Fountain Water Co., 138 Cal. 579, 71 P. 1123, 1136; City of Baltimore v. Kane, 125 Md. 135, 93 A. 393; Grand Rapids & I. Ry. Co. v. Kalamazoo Circuit Judge, 154 Mich. 493,

117 N.W. 1050; Michigan O. & I. Ry. Co. v. Monroe Circuit Judge, 144 Mich. 44, 107 N.W. 704.

In 29 C.J.S., Eminent Domain, § 233, p. 1200, the author of the text states:

"Change of venue. In the absence of statute, there is no right to change the venue in a condemnation proceeding, even if such a proceeding is an action at law, and even though a change of venue is authorized by statute, a party is not entitled to such change if no good reason therefor is shown. Under a statute authorizing a change of venue in a civil action, according to some authorities, a change of venue may be had in a condemnation proceeding, on a timely application therefor, and the court to which the case is transmitted obtains jurisdiction to dispose of the condemnation proceeding. On the other hand, according to other authorities, a change of venue of the proceeding cannot be had under such statute, since a condemnation proceeding is a special proceeding."

That the proceeding by condemnation is not according to course of the common law is affirmed by the court in Michigan, O. & I. Ry. Co. v. Monroe Circuit Judge, where the court said:

"Condemnation proceedings may be commenced in any court of record in the county where the lands lie. It may be heard before the judge at chambers. The commissioners, when appointed, are not under the power or control of the court or judge. The judge appoints the time of their first meeting. The commissioners then adjourn from time to time, as they see fit, visit the premises, take proofs, and then report their proceedings to the court or the judge. They do not proceed according to the course of the common law."

As long ago as Gonzales v. Gallegos, 10 N.M. 372, 62 P. 1103, we pointed out the distinction between "special proceedings" and "civil actions" and held that the procedure applicable to civil actions generally does not apply to the former and that the rights and remedies of the parties under special proceedings must be found within the statute itself.

A clear cut decision of this court applying the distinction mentioned in the foregoing text and decisions is to be found in Gallup Southwestern Coal Co. v. Gallup American Coal Co., 39 N.M. 94, 40 P.2d 627. It deals with a condemnation statute as does the present case and it may be fairly spoken of as a companion to the one before us. Following entry of decree in the case, one of the parties prosecuted an appeal. Notwithstanding the fact that appeals had been taken and heard from proceedings in

condemnation under the statute in question for many years without question, Atchison T. & S. F. Ry. Co. v. Richter, 20 N.M. 278, 148 P. 478, L.R.A.1916F, 969 when the right to such a review was squarely presented, we were compelled to hold that being a special proceeding the appeal governing in ordinary civil actions did not apply. Accordingly, a review as on appeal was denied. However, having been timely sought we were able to review jurisdictional questions relied upon as if upon certiorari and render a decision thereon. A like decision had earlier been reached in efforts to review judgments entered in special statutory proceedings. State v. Rosenwald Bros. Co., infra; State v. Rosenwald, 23 N.M. 584, 170 P. 45; Atchison, T. & S. F. Ry. Co. v. State, 23 N.M. 585, 170 P. 44. See, also, Staet v. Eychaner, 41 (N.M. 683, 73 P.2d 809.

There is no distinction in principle between the doctrine applied in the Gallup Southwestern Coal Co. v. Gallup American Coal Co., supra, as well as the tax cases just cited of denying an appeal where not provided for in the special statutory proceedings reviewed and the present case where we are asked to transport into the special proceeding by construction the right to change the venue applicable in ordinary civil actions. See; Gonzales· v. Gallegos, supra;·State v. Rosenwald Bros. Co., 23

N.M. 578, 170 P. 42; Wood v. Beals, 29 N.M. 88, 218 P. 354; Bryan v. Barnett, 35 N.M. 207, 292 P. 611. In State v. Rosenwald Bros. Co., supra, we quoted approvingly from Schuster v. Schuster, 84 Minn. 403, 87 N.W. 1014, as follows:

"The phrase 'special proceedings,' within its proper definition, is a generic term for all civil remedies in courts of justice which are not ordinary actions. * * * Where the law confers a right, and authorizes a special application to a court to enforce it, the proceeding is special within the ordinary meaning of the term 'special proceeding.'" [23 N.M. 584, 170 P. 44.]

Furthermore, the general statute on venue itself is suggestive that the legislature was not unmindful of the omission to provide for a change of venue in the special proceedings where municipalities are parties. 1941 Comp., Sec. 19–502, provides:

"All civil actions not otherwise required by law to be brought in the district court of Santa Fe County, wherein any *municipality* or board of county commissioners is a party defendant, shall be instituted only in the district court of the county in which such municipality is located, or for which such board of county commissioners is· acting." (Emphasis ours.)

In Peisker v. Chavez, 46 N.M. 159, 123 P.2d 726, 727, we said:

"The fact that the statutes provide that '* * * actions shall be *brought* in the county,' etc., and fails to state that they shall be *tried* in such county is immaterial. It is the general rule that actions must be tried where brought unless the venue is changed."

▐ We hold that the trial court erred in granting a change of venue in the case. It should have sustained the plaintiff's objection to doing so. For this error the case will have to go back for a new trial. We are not unmindful that there are cases from other states which, under varying statutory and constitutional provisions, hold they confer the right to a change of venue in condemnation proceedings as a matter of interpretation. See People ex rel. Naylor v. Smith, 281 Ill. 538, 118 N.E. 61, and State ex rel. Arkansas Western Ry. Co. v. Rowe, 69 Ark. 642, 65 S.W. 463, as illustrative of this line of decisions. However, they are contrary to the rationale of our own decisions involving rights under special statutory proceedings, especially the case of Gallup American Coal Co. v. Gallup Southwestern Coal Co., supra.

▐ In view of the fact that a new trial is being awarded we think we should express our views on another question presented and argued by the parties. Namely, which the trial court refused, presenting its

one dealing with the extent to which benefits to the property remaining where a part only is taken may be employed as an offset against amount of damages suffered by the owner from the taking.

The trial court in its instruction No. 24 charged the jury:

"The defendant in this case is entitled to the fair cash market value on February 17, 1949 of the land so taken, regardless of the causes which gave the value at that time, and the value of the 13 foot strip of land taken by plaintiff should be fixed and allowed by you as damages in this case without deduction. therefrom, on account of any benefits that may have accrued * * *,"

The trial court in its instruction No. 25 also told the jury:

"If you find from the preponderance of the evidence that all of the property located in the City of Tucumcari along Highway 66 was benefited proportionately with the property of defendant, by the widening and improving of Highway 66, then such benefits, if any, to the property belonging to the Magnolia Petroleum Company cannot be deducted from the amount of its damages, if any."

The City requested certain instructions which the trial court refused, presenting its

theory of the offsets properly to be allowed. They read as follows:

"Defendant's Specially Requested Instruction No. 23.

"If you should find from the evidence that other property adjoining U. S. Highway 66 or Gaynell Avenue in Tucumcari was increased in value by reason of the widening of said Highway and if you find from the evidence that the property of the defendant Magnolia Petroleum Company which adjoins said highway was increased in value by the reason of the widening or construction of said highway then you shall take into consideration any increase in the value to the property of the defendant as an off-set to damages, if any, which the defendant may be entitled to receive."

"Defendant's Specially Requested Instruction No. 24.

"You are instructed that if you find from the evidence that the fair market value of the property of the Magnolia Petroleum Company remaining immediately after construction of U. S. Highway 66 reflects benefits derived from the construction of said highway then you shall determine the damages, if any, by deducting the fair market value of said property immediately aft-

er the construction of said highway from the fair market value of all of defendant's property immediately before said construction, regardless of the fact, that other properties adjoining said highway 66 may have been benefited from the construction of said highway."

"Defendant's Specially Requested Instruction No. 9.

"You are instructed, that if you find from the evidence, that that part of the property of defendant Magnolia Petroleum Company remaining after the taking of a portion thereof for highway right of way, was worth as much or more in the market immediately after construction of the highway improvement as the entire property of defendant was worth in the market prior to the highway construction, then you must return a verdict for the City of Tucumcari."

Appropriate objections to the giving and to the refusal to give these instructions were interposed seasonably by the defendant and we thus have squarely presented the claimed error in the trial court's action touching the matter of what are proper offsets under the facts of this case. The author of the text in 20 C.J. 730, § 189, under the Topic "Eminent Domain," with sub-title "Where Part of Tract is Taken," states:

"The measure of damages is the injury done to the fair market value of the entire tract by the taking of only a part. In other words the owner is entitled to recover the difference between the market value of the entire tract before the taking and the market value of what is left after the taking." See also 29 C.J.S., Eminent Domain, § 139.

In early territorial days we approved the "before and after rule" of assessing damages in condemnation cases. In New Mexican Railroad Co. v. Hendricks, 6 N.M. 611, 30 P. 901, we said:

"The rule of damages in such cases [condemnation cases] is the value of the property immediately before and after the construction of the road. * * *"

In its application to the facts of this case the rule would have to be paraphrased from the language of the Hendricks case, viz., "before and after the construction of the railroad" to read "before and after construction of the improvement." And as late as 52 years after the decision in the Hendricks case, this court was still affirming the rationale of that decision in the case of Board of Commissioners of Santa Fe County v. Slaughter, 49 N.M. 141, 158 P.2d 859, 860, where we said:

"The general rule for arriving at just compensation for property not taken but adversely affected is the so-called 'before and after' rule; and this poses the question: What was the value before the taking; and what is now the market value after the taking? The owner of the property, ordinarily, is entitled to receive the difference between these sums." Citing 20 C.J. 730; 29 C.J.S., Eminent Domain, § 139.

The author of the annotation dealing with this subject in 145 A.L.R. 14, discloses that New Mexico is not out of line with a goodly number of other jurisdictions in its position on this question. He states:

"In quite a number of cases, where part of a parcel of land is taken for public use, the measure of damages is said to be the difference between the value of the whole land immediately before and the value of the remaining part immediately after the taking. Since a finding of market necessarily includes value contributed thereto by any kind of benefits, *general as well as special*, a measure of damages expressed solely in terms of market value would, at least if literally applied, allow the deduction of any benefit that increases the value of the remainder * * *."

As late as our somewhat recent decision in In re Arch Hurley Conservancy District, 52 N.M. 34, 191 P.2d 338, we sup-

ported arguendo the right to consider incidental economic benefits as a factor against a claim of confiscation by the inclusion of certain property in a district organized under the conservancy act.

We think the trial court erred in giving the instructions it did on this subject and in declining to instruct as requested by the defendant City. Of course, there are decisions from other jurisdictions supporting the position urged upon us by the plaintiff and adopted by the trial court in its instructions. See Lanier v. Town of Greenville, 174 N.C. 311, 93 S.E. 850, and City of Omaha v. Schaller, 26 Neb. 522, 42 N.W. 721. But on this issue as on the question of right to change the venue, our prior decisions commit us to a rule contrary to that adopted by the trial court and as contended for by the plaintiff. See, also, on last question decided Board of Commissioners of Dona Ana County v. Gardner, 57 N.M. 478, 260 P.2d 682.

It follows from what has been said that the judgment must be reversed and the cause remanded to the district court of Curry County with a direction to it to set aside its judgment and to transfer the cause back to the district court of Quay County for a new trial.

It is so ordered.

McGHEE, COMPTON, COORS and LUJAN, JJ., concur.