413 P.2d 204

The CITY OF ALBUQUERQUE, New Mex-
ico, a municipal corporation,
Plaintiff-Appellee,

v.

E. M. CHAPMAN, Jr., and Virginia Chapman,
his wife, Defendants-Appellants.

No. 7746.

Supreme Court of New Mexico.

Feb. 28, 1966.

Rehearing Denied April 20, 1966.

Waldo Spiess, Charles T. Hooker, Albuquerque, for appellants.

Frederick M. Mowrer, Asst. City Atty., Key & May, Albuquerque, for appellee.

COMPTON, Justice.

This action in eminent domain was brought under an act providing for special alternative procedure for condemnation of public and private property, Laws 1959, ch. 324, §§ 22–9–39 to 22–9–54, N.M.S.A., 1953 Comp. (Supp.1965). The appellee, the City of Albuquerque, sought to acquire a part of a tract of land owned by E. M. Chapman, Jr. and Virginia Chapman, his wife, for the improvement of Zuni Road. These appellants appeal from a judgment denying compensation or damages to them as a result of the taking.

Several points are raised by the appellants here. Basically, they challenge the

sufficiency of the evidence to support the court's findings that the fair market value of the remaining land was equal to or greater than the fair market value of the entire tract before the taking, and that there was no depreciation in the fair market value of the entire tract as a result of the taking of a portion thereof. Inter-related are the claimed errors of the court in failing to accord to the property a market value based upon the highest and best use to which it was adaptable, and in setting off benefits to the remaining land against damages for the taking where the remainder was subject to a special assessment for the payment of the improvement which resulted in the benefit. Lastly, they contend a judgment in at least the minimal amount of damages established by competent evidence should have been awarded them.

Upon review by this court we are limited to a determination whether the findings of the trial court are supported by substantial evidence. Board of County Com'rs of Dona Ana County v. Little, 74 N.M. 605, 396 P.2d 591. And the evidence must be viewed in the light most favorable to the prevailing party. State ex rel. State Highway Commission v. Tanny, 68 N.M. 117, 359 P.2d 350.

The entire property prior to the condemnation consisted of 330 feet extending along Wyoming Boulevard, S.E., on the east, and Virginia Avenue on the west, and 611 feet extending along Zuni Road on the north. The strip of land acquired was 611 feet by 30 feet, being the northern boundary of the tract.

In 1953 when the fee simple title to the property was acquired by the appellants, and up to the time of trial, all of it except the condemned portion had been improved, divided into lots and operated as a trailer court. The condemned portion had never been used as a rental part of the trailer court and a wooden fence had been constructed along its south line in about 1940 and had been maintained in that location up to the time of this proceeding. It is not disputed that the appellants maintained the principal access to the trailer court from the north on Zuni Road through the condemned parcel. It was established at the trial that the property was subject to three zoning regulations, C–1, C–2 and R–2. The condemned parcel was partly in C–1 and partly in C–2. It was also established that C–2 permits the property to be used as a trailer court. Under C–1 and R–2 zoning this use of the property may continue only until March 1971, provided there is compliance with the standards required by the zoning ordinances on or before January 1, 1968.

At the time of the acquisition of this property by the appellants there was in existence a city master plan showing the eventual width of Zuni Road to be 60 feet. A plat recorded in Bernalillo County in 1926 showed a dedication to the public of

an additional 30 feet just north of the condemned parcel for Zuni Road. A former county surveyor testified that at the time of this dedication the Board of County Commissioners had determined the minimum width of streets to be 50 feet. It appears unquestioned that at least part of the parcel condemned had been used by the public for about ten years as a part of the traffic pattern on Zuni Road, but it was stipulated that no restrictive easement was acquired by the city.

In this jurisdiction, the measure of damages in eminent domain is determined by the application of the "before and after" rule, by which the owner of property is entitled to recover as compensation the amount by which the fair market value of his property has been depreciated by the taking of a portion thereof. If there is no depreciation in fair market value as a result of the taking, there is no damage. Board of Trustees of the Town of Farmington v. Spencer, 75 N.M. 636, 409 P.2d 269, decided December 27, 1965, Board of Trustees of Town of Farmington v. B. J. Service, Inc., 75 N.M. 459, 406 P.2d 171; Transwestern Pipe Line Company v. Yandell, 69 N.M. 448, 367 P.2d 938; Board of County Com'rs of Lincoln County v. Harris, 69 N.M. 315, 366 P.2d 710; Board of Com'rs of Dona Ana County v. Gardner, 57 N.M. 478, 260 P.2d 682; City of Tucumcari v. Magnolia Petroleum Co., 57 N.M. 392, 259 P.2d 351. Ordinarily, market value of land is based on the amount for which it would sell between one willing to sell and one willing to buy. While this is not generally true in condemnation proceedings where a willing buyer is lacking, it is nevertheless a basis upon which opinion testimony as to market value is received. Transwestern Pipe Line Company v. Yandell, supra.

The record in this case has been thoroughly examined and at the outset we are met with unreconciled variances in the evidence relating to the dimensions of the property involved. In order to be able to intelligently analyze the testimony of the expert witnesses it was necessary to look to the record to determine not only the exact dimensions of the entire tract both before and after the taking but also the number of square feet contained in each of the three zones.

The undisputed evidence shows the entire tract of land before the taking to be 611 feet long by 330 feet wide, or a total of 201,630 square feet. The portion condemned was 611 feet long by 30 feet wide, or a total of 18,330 square feet. The remainder tract is 611 feet long by 300 feet wide, consisting of 183,300 square feet.

The zoning inspector for the city testified as to the dimensions of the property by zones "after" the taking as follows: In zone C–2, 190 feet by 300 feet; in zone C–1, 170 feet by 380 feet; and in zone R–2, 130 feet by 380 feet. This testimony refers to a total of 171,000 square feet which falls

short by some 12,000 square feet of the number established for the remainder tract, obviously because it is based on erroneous outside dimensions of the whole tract before the taking.

An adjustment of the zoning inspector's figures to conform to the correct outside dimensions produces the correct number of total square feet in each zone of the remainder land, as follows: C–2, 200 by 300 feet; C–1, 170 by 411 feet; and R–2, 130 by 411 feet, or a total of 183,300 square feet. From this it is easily ascertainable that the 18,330 feet contained in the portion condemned consists of 200 by 30 feet in zone C–2, or 6,000 square feet, and 411 by 30 feet in zone C–1, or a total of 12,330 square feet.

With these basic figures in mind we proceded to a consideration of the substantiality of the evidence to support the court's findings, necessarily directing our attention to the testimony of the two witnesses for the appellee who qualified as experts in real estate appraisal, Mr. Boldt and Mr. Scalf.

Mr. Boldt, without attributing any "before and after" values to the property or to benefits, and relying on an appraisal report relating to the property here involved made by him and others for the city in 1958, based his opinion of no damage to the appellants by the partial taking on the grounds (a) that the condemned parcel had no utility at the time of the taking; (b) that the utility of the remaining property had neither decreas-

ed nor changed by the taking; and (c) that in order properly to develop the remainder of the property. it was necessary that the portion condemned be dedicated to provide a proper traffic path around the property. Even if this testimony is based upon proper considerations, which we will consider later, standing alone and without some practical application of the before and after rule, it is clearly not substantial to support the court's findings.

Mr. Scalf arrived at his opinion of no damage as a result of the taking by a consideration of substantially the same facts. In addition, he considered that an informed purchaser would not only recognize these facts but would penalize any purchase price on realizing he might not be able to continue to use the property as a trailer court under its existing zoning. Thereafter, taking into consideration comparable recent sales of property in each of the three zones, he arrived at a total market value of the property before the taking of $134,838.00, as follows: C–2 property at 74 cents per square foot, $82,500.00; C–1 property at 72 cents per square foot, $36,234.00; and R–2 property at 32 cents per square foot, $16,-104.00. Significantly, however, Mr Scalf did not furnish any of the dimensions upon which his calculations were based. Again, by simple mathematical computation, we determined that he used 111,487 square feet in zone C–2, and 50,325 square feet each in zones C–1 and R–2, or a total of approxi-

mately 10,500 square feet more than the number established for the entire tract. Coupled with the inaccurate footages used for each of the zones, it is apparent that this testimony is not reasonably related to the actual facts. By using the same unit values but applying them to the correct dimensions in each zone we arrive at a "before" value of $125,121.60, of which the condemned portion accounts for $13,317.60.

Be that as it may, in arriving at his "after" value, Mr. Scalf testified:

"* * * I utilized the same footages as before but took off 30 x 200 for the C–2, and 30 by the remainder for the C–1. I still had the same R–2 land, and I come up with a total value of $129,144.00. Now, in doing that, I used 82 cents a square foot for the front C–2 land, believing that the valuation has increased due to the increased flow of traffic permitted now with a proper thoroughfare, that any purchaser would be willing to pay a premium for land in that condition and, also, he is going to pick up at least the cost of the street improvements. * * * Then I did one other thing. I checked back, believing that this is a rear land taking. In other words, this 30 feet, if it has any value at all, could just as well have been taken off the R–2 portion at the rear so it would be valued, on an overall figure, no more valuable than the rear land at 32 cents a square foot— so 18,330 square feet taken at a value of 32 cents would be $5,865.60, or a difference of $71.00."

Thus it is seen that in arriving at his "after" valuation Mr. Scalf offset benefits as a result of the taking by increasing the value of an unknown quantity of C–2 front land from 74 cents to 82 cents a square foot, leaving a difference in his before and after values of $5,694.00 in favor of the appellants. His testimony fails, however, to point out whether the C–2 land to which he refers fronts on Zuni Road, with which we are concerned, or on Wyoming Boulevard. Thereafter, based either on the lack of use of the condemned parcel or on no decrease or change in the utility of the remainder property to the appellants by the taking, he converts the condemned parcel, which is frontage property, into rear land, for reasons which are not clear, attributes to it a reduced market value of $5,865.60 and then deducts that amount from the difference shown above, to arrive at a little, or no, damage figure.

■ The foregoing testimony, based almost entirely on inaccurate dimensions and mathematical calculations as well as undeveloped reasoning, is recited in detail to demonstrate its incompetency to establish either before and after market values or off-setting benefits. Thus, any findings of the court based thereon are without substantial support and must fail. Opin-

ions by real estate appraisers on "before and after" market values must be considered in connection with related facts on which they are based, and a satisfactory explanation must be given as to how the witness arrived at his conclusion. Arkansas State Highway Commission v. Ptak, 236 Ark. 105, 364 S.W.2d 794.

In view of what has been said, we have no alternative but to reverse the judgment and remand the case for retrial. Nevertheless, we believe other points raised and argued by the parties should be noticed.

The appellants contend that in determining that the appellants were not damaged by the taking, the trial court failed to accord to the property a market value based upon the highest and best use to which it was adaptable. A reading of the court's findings lends support to this contention.

The basic question is what was the entire property worth in the market before the taking, considering not merely the uses to which it was applied at the time of condemnation but the highest and best uses for which it was adaptable. United States v. Cox, U.S.C.A. 10th Cir., 190 F.2d 293; Sayers v. City of Mobile, 276 Ala. 589, 165 So.2d 371; Arkansas State Highway Commission v. Elliott, 234 Ark. 619, 353 S.W.2d 526; Iowa Development Co. v. Iowa State Highway Comm., 252 Iowa 978, 108 N.W.2d 487; State Road Department v. Chicone, Fla.1963, 158 So.2d 753; Nichols on Eminent Domain, Vol. 4, § 12.314; 29A C.J.S. Eminent Domain § 160; 18 Am.Jur., Eminent Domain, § 244. Cf. Board of County Com'rs of Roosevelt County v. Good, 44 N.M. 495, 105 P.2d 470. In Nichols, supra, p. 161, it is stated that property is not to be deemed worthless because the owner allowed it to go to waste, or to be regarded as valueless because he is unable to put it to any use.

The appellants held fee simple title to the property. There is no evidence that all of it could not have been used, or was not available and adaptable for use, as a trailer court prior to the taking. Noticeably, neither the appellee's experts, nor the court, accorded to the property a market value based upon the highest and best use to which it was adaptable. In this connection, we believe that the real difficulty in this case arises not so much from the appellants' lack of use of the portion of the property condemned as from the fact that for many years it had been earmarked for condemnation for use as part of a public street.

The appellants assert, and cite authority for the proposition, that the prospect of condemnation is not to be considered in ascertaining compensation. Meritorious as this contention may be, the issue was not raised below and, therefore, cannot be considered by us for the first

time on appeal. Shelley v. Norris, 73 N.M. 148, 386 P.2d 243.

The next point to be noticed relates to the offsetting of benefits. It is the appellants' position that benefits to a remaining tract of land cannot be offset against damages for the taking of a portion of the tract when the remaining tract becomes subject to a special assessment for the payment of the improvements which result in the benefit.

Section 14–37–20, N.M.S.A., 1953 Comp., provides for the assessment to each lot or parcel of land to be improved by the municipality its proportionate share of the total amount of the expenses of the improvement, on a frontage, zone, area or other equitable basis and, further, that in no event shall the assessments exceed the estimated benefits to the property so assessed.

We have held that a special assessment against property for the widening and paving of a public street is a local improvement that generally and peculiarly enhances the value of the property against which the assessment is levied, to an amount equal to, if not in excess of, the amount of the special assessment. Shalit v. City Commission of City of Albuquerque, 62 N.M. 55, 304 P.2d 578. While in some respects the levying of such an assessment resembles the setting off of benefits it is not in fact based on direct benefits but on a nondiscriminatory method of determining the proportionate share in the cost of the improvement to be borne by the landowners affected. It is not essential that benefits which justify assessments to particular lands for public improvements be direct or immediate. They may consist of gains to be reasonably expected as a result of the improvement. It is only essential that they have a better basis than mere speculation or conjecture. In re Arch Hurley Conservancy District, 52 N.M. 34, 191 P.2d 338.

We have also held that these special assessments are quasi taxes levied to enable the discharge of a governmental function and that the power to impose them is related to the taxing power. Waltom v. City of Portales, 42 N.M. 433, 81 P.2d 58.

In any event, in eminent domain proceedings, where the ultimate inquiry is the amount of compensation, if any, to be paid, based upon the difference between the value of the tract immediately before the taking and the value of the part of the tract remaining after the taking, we have already expressed ourselves on the issue of off-setting benefits. In Board of Com'rs of Dona Ana County v. Gardner, supra, we held that both general and special benefits accruing to land may be set off against damages to the remainder land as well as against the value of the part taken. General benefits are those

which the adjoining landowner shares in common with the general public and special benefits are those resulting from a public work which enhance the value of the lands not taken because of their advantageous relation to the improvement. See also City of Tucumcari v. Magnolia Petroleum Co., supra, and Transwestern Pipe Line Company v. Yandell, supra.

We are aware of the decisions in other jurisdictions, relied upon by the appellants, where, either by special constitutional provision or judicial decision, the setting off of either general or special benefits, or both, is prohibited when land is taken. Those decisions are not applicable in this jurisdiction. See Nichols on Eminent Domain, Vol. 3, § 8.6209 on the set-off of benefits compared with assessments for benefit; and § 8.6211 [32] with respect to New Mexico in particular.

We need only briefly mention a remaining point raised by the appellants, that the court erred in refusing its requested finding that the fair market value of their property depreciated in the sum of $14,650.00 or, in the alternative, that it should have found the value in accordance with the minimal amount established by competent evidence. The tendered finding was based upon the testimony of one of the appellants' experts which obviously was rejected by the court. Our review here is limited to a determination whether the findings of the court are supported by substantial evidence, not whether the evidence would support contrary findings. Thomas v. Barber's Super Markets, Inc., 74 N.M. 720, 398 P.2d 51.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

It is so ordered.

CARMODY, C. J., and NOBLE, J., concur.