775 P.2d 1281

**YATES PETROLEUM CORPORATION,
a New Mexico corporation,
Plaintiff–Appellant,**

v.

**W.G. KENNEDY and Betty L. Kennedy,
his wife, Defendants–Appellees.**

No. 17863.

Supreme Court of New Mexico.

June 22, 1989.

Dickerson, Fisk & Vandiver, Rebecca L. Reese, Artesia, for plaintiff-appellant.

McCormick, Forbes, Caraway & Tabor, John M. Caraway, Michael E. Dargel, Carlsbad, for defendants-appellees.

## OPINION

RANSOM, Justice.

Yates Petroleum Corporation (Yates) appeals from the judgment of damages awarded W.G. and Betty L. Kennedy (Kennedy) following a bench trial in a condemnation proceeding. This case is receiving appellate review for the third time. *See Kennedy v. Yates Petroleum Corp.*, 104 N.M. 596, 725 P.2d 572 (1986); *Kennedy v. Yates Petroleum Corp.*, 101 N.M. 268, 681 P.2d 53 (1984). At issue here is whether the trial court erred in the method employed to calculate just compensation, and, if not, whether the judgment awarded is supported by substantial evidence.

On February 16, 1983, Yates filed a proceeding to condemn an easement for a thirty-foot right-of-way for the continuing operation and maintenance of a natural gas pipeline that traverses Kennedy's ranchland for a distance of 9,240 feet. The easement burdens approximately 6.38 acres. The pipeline had been in existence since 1972 and preceded Kennedy's ownership of the ranch by three years. This action is a consequence of Yates' failure to record an easement acquired from the prior owner.

Three commissioners were appointed to assess just compensation. Yates objected to the commissioners' report and appraisal; but, following a hearing, the trial court confirmed the damage award. Pursuant to NMSA 1978, Section 42A–1–21 (Repl.Pamp. 1981), Yates demanded de novo review of the compensation award. It waived trial by jury. The case was tried to the same judge who had confirmed the commissioners' report and judgment.

At trial, Yates presented its evidence first and called an expert real estate appraiser as one of its witnesses. The expert testified that the highest and best use of this property was for ranching, the fair market value of the ranch before the taking of the easement was the same as after the taking, and the fair market value of property comparable to Kennedy's was $55 to $165 per acre.

In presenting his case-in-chief, Kennedy took the stand and recounted problems he had experienced with dust created by traffic along a tract road that ran parallel to the pipeline within the easement right-of-way. Yates' employees would travel this road at least once a week to check the condition of the pipeline. Kennedy testified that his livestock would not graze on grass that was covered by dust raised by this traffic. While he made no claim for special damages to which he might be entitled (as not duplicative of the statutory measure of damages for the property actually taken, *see* SCRA 1986, 13–705), Kennedy opined that, based upon unspecified past and prospective damage to his cattle operation, the difference in the value of his ranch before the taking compared to after the taking was $40,000. Kennedy testified:

Q. [D]o you have an opinion as to the *value per acre* of your deeded lands in the area where the taking occurred?

A. Well, *not really*. I didn't set a value on it because I wasn't ready to sell any of it.

Q. Let me ask you this, Mr. Kennedy. Do you have an opinion as to the *difference in value* of your ranch before the taking versus after the taking as of February 1983 in damages?

A. Well, considering all the traffic and the dust, and that kind of stuff that I've put up with on that pipeline * * * I would say more in the neighborhood of $40,000.

Q. Insofar as in *diminution in value* occasioned by the taking?

A. Yes. I've *lost considerable income from the dust* that has been put on the grass, and the *cattle will not graze it until it's washed off;* they just go to the other areas. And it's been *a pretty damaging factor.*

. . . .

A. [I]t's hard to pick a figure and say, "Well, *this is a fair figure for the damage that we're going to do so many years down the road, or what we've already did in the past.*" * * * *

THE COURT: What factors did you use in coming up with the $40,000?

THE WITNESS: Well,—

THE COURT: What did you take into account?

THE WITNESS: The years of use that they have used this pipeline and run up and down it consistently, and the fact that no other pipeline that I've got or anybody else has got in the area, that I know of, has got pits on it that are a possibility for livestock getting in it—and I've had Yates dig other pits that I've had cattle get in and get killed, and all this kind of stuff. And it's kind of—I don't know, *you've just got to pick something out of the blue sky* that you feel like is a just figure. And so that's where I come up with it; I just—

. . . .

THE WITNESS: We've had, you know, we've had considerable damage, and we'll continue to have it as long as they use it. And *if we can stop that usage*, well, *my guesstimate would be lower.*

(Emphasis added.)

Mr. Fred Collins, one of the commissioners called as a witness by Kennedy, corroborated that traffic on the easement tract road creates dust that settles on the grass preventing the livestock from grazing. He gave his opinion that, for grazing purposes, the land injuriously affected by the dust would cover 300 feet in addition to the easement, and that the dust can be blown west a quarter of a mile (1,320 feet). On cross-examination, however, Collins conceded that he had no comprehensive knowledge of the traffic on the tract road and could only testify that "there's some dust."

In the court's second amended findings of fact and conclusions of law, the trial judge made the following findings:

11. As a result of the operation, and maintenance of the pipeline, dust is cast into the air in an area approximately ¼ mile wide for the length of the pipeline. This dust interferes with, and consequently greatly diminishes the value of the property, for ranching purposes, because cattle won't eat vegetation with a heavy layer of dust. There has been an injurious effect and "taking" of a strip of land owned by the Plaintiff ¼ mile wide.

12. The fair market value of the land "taken" for ranching purposes is $165.00 per acre.

13. As mandated by 42A–1–26 NMSA 1978, Kennedy has suffered total damages resulting from the taking by Yates equal to the difference between the fair market value of the entire property immediately before the taking and the fair market value of the property remaining immediately after the taking in the sum of $46,200.00.

*Burden of proof.* First, Yates complains that the trial court improperly allocated the burdens of proof to establish damages in this case. Following SCRA 1986, 13–701, the court required both Kennedy and Yates to prove their respective contentions by the greater weight of the evidence. Yates maintains that Kennedy had the burden of proving that substantial damages resulted from Yates' taking of the easement. In ruling that Yates should prove its contentions by a preponderance, Yates argues that the trial court improperly required it to prove that the condemnation caused only nominal damages.

■ In his special concurrence in *Transwestern Pipe Line Co. v. Yandell*, 69 N.M. 448, 367 P.2d 938 (1961), Justice Noble stated that the party appealing the commission's judgment has the burden to prove damages or the lack of it. *Id.* at 462, 367 P.2d at 947 (Noble, J., specially concurring). The proposition was stated without any citation to authority and is at odds with the *Yandell* majority's holding that, once confirmation of the commissioner's report is appealed for trial de novo, the report as

well as the act of confirmation become functus officio. *Id.* at 453, 367 P.2d at 941. Although the trial de novo is not the beginning of a new action, it is a new and distinct adjudication that requires a fresh presentation of evidence.

■ In this posture, it is the landowner who has the burden to substantiate by a preponderance his claim of damages. *See* 5 J. Sackman, *Nichols on Eminent Domain* § 18.5 (3d ed. 1985). Regardless of being denominated the defendant, it is the landowner who opens and closes the evidence, as well as the arguments. *See State ex rel. State Highway Comm'n v. Sherman,* 82 N.M. 316, 318, 481 P.2d 104, 106 (1971). After the landowner presents his evidence of damages, the condemnor has three options: (1) under appropriate circumstances, it can move for a directed verdict; (2) it can go forward to discredit the landowner's evidence; and (3) it can offer to prove affirmatively by a preponderance an alternative amount of damages. In the latter instance, the jury would be instructed on the statement of the case pursuant to SCRA 1986, 13–701. Because both Kennedy and Yates structured their case on alternative theories of damages, the trial court here did not err in assigning the burdens of proof as it did. However, we note that Kennedy should have been first to present evidence.

*Measure of damages.* Yates argues that the trial court failed to apply the proper method for determining just compensation under the circumstances of this case. Under the Eminent Domain Code (NMSA 1978, Sections 42A–1–1 to 42A–1–34 (Repl. Pamp.1981 & Cum.Supp.1988)), damages for a partial taking are measured in accordance with Section 42A–1–26. Where there is a partial taking of property,

> the measure of compensation and damages resulting from the taking shall be the difference between the fair market value of the entire property immediately before the taking and the fair market value of the property remaining immediately after the taking. In determining such difference, all elements which would enhance or diminish the fair market value before and after the taking shall be considered even though some of the damages sustained by the remaining property, in themselves, might otherwise be deemed noncompensable. Further, in determining such values or differences therein, elements which would enhance or benefit any property not taken shall only be considered for the purpose of offsetting any damages or diminution of value to the property not taken.

§ 42A–1–26. This method of calculating damages is called the "before and after" rule. The rule is a recognition that, in addition to compensation for property actually taken, the landowner should be compensated for any loss of value suffered by the remaining property because of the condemnation of a particular portion. *See State ex rel. State Highway Dep't of N.M. v. Strosnider,* 106 N.M. 608, 611, 747 P.2d 254, 257 (Ct.App.1987) (rule's purpose is to compensate for any diminution in the fair market value of the remaining property as a result of the taking); *City of Albuquerque v. Chapman,* 76 N.M. 162, 413 P.2d 204 (1966) (landowner entitled to recover the amount his property has depreciated by a taking of a portion).

In *Chapman,* the Court also stated that the rule allows the finding of no damages if there was no depreciation in the fair market value of the property as a result of a taking of a portion. 76 N.M. at 166, 413 P.2d at 206; *Board of Comm'rs v. Gardner,* 57 N.M. 478, 260 P.2d 682 (1953) (holding that benefits accruing to remaining property shall be considered in calculating damages for the value of the part taken as well as any damages to the part remaining). In 1973, the legislature supplemented the "before and after" rule (N.M. Laws 1968, Ch. 30, § 1) to read as follows: "Further, in determining such values or differences therein, elements which would enhance or benefit any property not taken shall only be considered for the purpose of offsetting any damages or diminution of value to the property not taken." N.M.

Laws 1973, Ch. 384, § 1 (codified at NMSA 1978, § 42–1–10). In 1981, the legislature repealed Section 42–1–10, *see* N.M.Laws 1981, Ch. 125, § 62, but the successor statute, Section 42A–1–26, was a reenactment of the rule and retained the supplemental language.

We believe the supplemental language nullifies the holdings in *Chapman* and *Gardner* that no damages exist when the fair market value of the remaining property after the taking is equal to or exceeds the fair market value of the entire property before the taking. If the remaining land is enhanced in value as a result of the project requiring the condemnation, that enhancement can only be used to offset damages to the value of the remaining property. § 42A–1–26. Recognized alternatives to the "before and after" rule compute damages by initially determining the value of the land taken and then adding any net damage that results to the remainder after a setoff of benefits. 4A J. Sackman, *Nichols on Eminent Domain* § 14.05 (3d ed. 1985). By modifying the "before and after" rule to allow accrued benefits to be set off only against damages to the property remaining, the legislature has adopted a "before and after" alternative for situations when the remainder is worth as much or more after the taking than the entirety was worth immediately before the taking. When there is not substantial evidence to demonstrate that the property has been diminished in fair market value by reason of a partial taking, the "before and after" rule loses its relevancy and the proper alternative measure of compensation would be the fair market value of the property actually taken.

*Inapplicability of "unity rule."* Yates argues that the trial court erred in calculating damages without reference to the value of Kennedy's entire property, a ranch encompassing 14,749 acres. Approximately 4,000 acres are deeded lands owned in fee as to the surface. The remaining land is leased by Kennedy from the State of New Mexico and the federal Bureau of Land Management, or is deeded to other private individuals. The fee lands, state and federal leases and permits, and lands deeded to other private individuals are scattered throughout the ranch in a "checkerboard" fashion. The pipeline easement touches upon the western boundary of three non-contiguous sections of Kennedy's deeded property. At issue is what constitutes Kennedy's *entire* property for purposes of measuring the diminution, if any, in the fair market value of his property due to the imposition of the pipeline easement.

■ Yates contends that under the unity rule the entire 14,749–acre ranch should be regarded as a single tract. The unity rule is applied to ascertain whether two or more parcels of property constitute a single larger tract for the purpose of calculating the fair market value of the property taken or the severance damages to the remaining land that is not subject to condemnation. *State ex rel. Highway Comm'n v. Gray*, 81 N.M. 399, 400–01, 467 P.2d 725, 726–27 (1970). To apply the unity rule, generally the following three factors should be present: physical contiguity, unity of use, and unity of ownership. *Id.* The combined presence of all three factors, however, is not a prerequisite to the rule's application. *Strosnider*, 106 N.M. at 611, 747 P.2d at 257.

Yates maintains that the entire property is used as one unified ranching operation, notwithstanding the diverse ownership interests represented within the ranch's boundaries. To support its contention, Yates points to the fact that Kennedy has a fence encircling all 14,749 acres and that the ranch is run and accounted for under a single set of books. Because Kennedy uses all the acreage to raise his livestock, Yates argues that this unity of use should be determinative in applying the unity rule and, for purposes of measuring damages due to a partial taking, the entire property constitutes 14,749 acres. Because Kennedy presented no evidence establishing the fair market value of his entire ranch before the easement and the fair market value

after the easement's placement, Yates concludes that the trial court erred as a matter of law in calculating Kennedy's damages.

■ We are not persuaded by Yates' argument or its authority. *See Texas Elec. Serv. Co. v. Linebery*, 327 S.W.2d 657, 662 (Tex.Civ.App.1959) (trial court did not err in assuming that 22,401 acres of the condemnee's land did constitute a single tract). The purpose of the unity rule is to ensure that the landowner is justly compensated by awarding him any damages that result from condemning a portion of his property that is integral to the value of the highest and best use of the remainder. *See* 4A J. Sackman, *Nichols on Eminent Domain* § 14.26 (3d ed. 1985). The entire property for purposes of before and after valuation can only be that property the value of which is demonstrated by substantial evidence to have been affected by the partial taking. It is a simple question of relevance and materiality. Because the only evidence to suggest the pipeline easement affected the value of Kennedy's ranch was limited to that acreage physically impacted by the easement, the entire property for purposes of ascertaining damages in this case would include only such land as was physically impacted.

■ *Substantial evidence.* In reviewing the record, it is apparent that the judgment cannot stand because there is no substantial evidence to support the trial court's findings as to diminution of value to land physically impacted beyond the 6.38 acres burdened by this easement, i.e., the portion actually taken. *See Getz v. Equitable Life Assurance Soc'y*, 90 N.M. 195, 198, 561 P.2d 468, 472 (trial court will be reversed if its findings, which have been properly attacked, are not supported by substantial evidence), *cert. denied*, 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95 (1977). We do not doubt the existence of dust along the tract road or that dust could have a deleterious effect on grazing. However, we are unable to discern evidence sufficient that a reasonable mind might accept as adequate to support the conclusion that a quarter-mile strip of land for the length of 9,240 feet has been effectively removed from pasturage due to the dust cast into the air from Yates' traffic on the easement tract road. *See Cave v. Cave*, 81 N.M. 797, 799, 474 P.2d 480, 482 (1970) (defining substantial evidence).

Only Collins gave testimony regarding the amount of dust coverage in terms of distance. However, his estimate was based purely on speculation as he admitted that he was not fully familiar with traffic patterns on the tract road. Kennedy stated that from his ranch house he could see dust rise like a curtain along the road and the dust would not settle quickly. Kennedy did not testify to any specific amounts of acreage affected by the dust. Furthermore, he acknowledged that at the time of the condemnation action the traffic causing the dust had "slowed down to a considerable degree."

There is no evidence that easement traffic generated dust that covered 280 acres sufficiently to deter all grazing by livestock, that there was any overgrazing of remaining pastures, or as to the frequency and extent to which the affected pasturage was rehabilitated by rain. Without more, testimony as to blowing dust cannot reasonably substantiate a finding that the operation and weekly maintenance of a pipeline easement, which physically burdens 6.38 acres, injuriously affects an additional 273.62 acres to the point of rendering the additional acres valueless or diminishing their value in any reasonably specified amount.

When the landowner fails to present substantial evidence to support a finding of a diminution in the fair market value of the remaining property as a result of a partial taking, as previously discussed, just compensation should equal the fair market value of the property actually taken. The trial court found that $165 per acre was the fair market value of the ranchland taken by Yates for its easement and this amount is supported by substantial evidence. Con-

sequently, Kennedy should be awarded compensation equal to $165 multiplied by the number of acres condemned for the easement.

The judgment is reversed and the case remanded for the trial court to enter a judgment consistent with this opinion.

IT IS SO ORDERED.

SOSA, C.J., and SCARBOROUGH, J., concur.